# UNITED STATES DISTRICT COURT

for the

## Middle District of Florida – Ocala Division

|  |  |  |
|---|---|---|
| BRITNI WALSH and FRANKLIN EUGENE DUVALL JR.,<br>*Plaintiffs,*<br><br>  **-v-**<br><br>MARION COUNTY SHERIFF'S OFFICE, LEAGUE CITY POLICE DEPARTMENT, CITY OF LEAGUE CITY, SHERIFF BILLY WOODS, KAILEIGH WALTON, HENRIK OSTHED, LEEF JEAN-FRANCOIS, and CLAYTON SHAW in their official and individual capacities,<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No._____<br><br><br>**COMPLAINT AND JURY DEMAND** |

### CIVIL ACTION

*This action alleges, inter alia, violations of the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, arising from the warrantless, non-consensual entry into Plaintiffs' home, the unlawful search and seizure of their property, the detention and interrogation of Plaintiff Duvall without lawful authority, the prolonged twenty-one day jailing of Plaintiff Duvall without legal justification, and the coordinated cross-state investigative conduct undertaken without warrants, judicial oversight, or statutory authorization and thereby infringing upon Plaintiffs' constitutional rights as protected by the aforementioned provisions.*

Plaintiffs BRITNI WALSH and FRANKLIN EUGENE DUVALL JR., by and through their attorneys, LLG National Law Group, and by way of Complaint, bring this action for damages and other equitable relief against Defendants, MARION COUNTY SHERIFF'S OFFICE, LEAGUE CITY POLICE DEPARTMENT, CITY OF LEAGUE CITY, SHERIFF BILLY WOODS, KAILEIGH WALTON, HENRIK OSTHED, LEEF JEAN-FRANCOIS, and CLAYTON SHAW in their official and individual capacities, alleging as follows:

1

**INTRODUCTION**

1.      This case arises from the warrantless, non-consensual, and unjustified entry into Plaintiffs' home by deputies of the Marion County Sheriff's Office ("MCSO"), the unlawful search and seizure of their property, the damage to their home, and the severe emotional distress inflicted when officers seized, interrogated, and jailed Plaintiff FRANKLIN EUGENE DUVALL JR. without lawful authority.

2.      The intrusion was not an isolated mistake. It was the predictable result of coordinated, unauthorized investigative activity between MCSO and the League City Police Department ("LCPD") in Texas, conducted without warrants, subpoenas, judicial oversight, or statutory authority.

3.      Plaintiffs' home was entered under a fabricated "swatting" pretext, their property was damaged, their privacy was violated, and Mr. Duvall was seized, interrogated in their home without probable cause, and jailed for three weeks without a warrant, and without exigent circumstances.

4.      Plaintiffs suffered property damage, emotional trauma, loss of privacy, and financial harm, all directly caused by Defendants' unconstitutional conduct.

**JURISDICTION AND VENUE**

5.      This This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Plaintiffs Britni Walsh and Franklin Duvall Jr. seek redress for the warrantless entry into their home, the unlawful search and seizure of their property, the prolonged detention and jailing of Duvall, and the inter-agency investigative conduct that precipitated and compounded those violations.

6.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343

because Plaintiffs assert claims arising under federal law, including 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

7.     This Court has personal jurisdiction over the Texas-based defendants because they purposefully directed investigative actions into Florida, initiated and coordinated cross-border evidence-gathering with Florida officers, and caused the constitutional injuries suffered by Plaintiff inside her Florida residence. Their intentional conduct was expressly aimed at Florida and created foreseeable consequences within this District, rendering the exercise of jurisdiction consistent with due process.

8.     The Texas-based defendants expressly aimed their conduct at Florida, knowing that their investigative directives would be executed inside Plaintiffs' home and would cause constitutional injury within this District. Under the 'effects test' articulated in *Calder v. Jones*, 465 U.S. 783 (1984), the focal point of Defendants' conduct and the resulting harm was Florida, making the exercise of personal jurisdiction constitutionally proper.

9.     Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) because all or a substantial part of the events and omissions giving rise to Plaintiffs' claims—including the warrantless home entry, property damage, and resulting constitutional violations—occurred in Marion County, Florida.

## PARTIES

10.     At all times relevant hereto, Plaintiff **BRITNI WALSH** is an adult resident of Marion County, Florida, and the homeowner of 14515 SE 91st Court, Summerfield, Florida. At all times relevant, she resided in and maintained exclusive possessory rights over the property unlawfully entered by Defendants.

11.     At all times relevant hereto, Plaintiff **FRANKLIN EUGENE DUVALL, JR.** is an

adult resident of Marion County, Florida, and the co-tenant of 14515 SE 91st Court, Summerfield, Florida. At all times relevant, he resided in and maintained possessory rights over the property unlawfully entered by Defendants.

12. At all times relevant hereto, Defendant CITY OF LEAGUE CITY, TEXAS is a municipal corporation organized under the laws of the State of Texas and is a suable entity under 42 U.S.C. § 1983 for its policies, customs, and practices. Defendant may be served at its public office located at 300 W. Walker Street, League City, Texas 77573.

13. At all times relevant hereto, Defendant LEAGUE CITY POLICE DEPARTMENT ("LCPD") is a municipal entity of the City of League City whose policies, customs, and practices caused or contributed to the constitutional violations alleged herein. Although not a separate jural entity under Texas law, it is named to ensure full notice and clarity of the allegations. Defendant may be served at 555 W. Walker Street, League City, Texas 77573.

14. At all times relevant hereto, Defendant MARION COUNTY SHERIFF'S OFFICE ("MCSO") is a Florida constitutional office and a suable entity under § 1983 for purposes of Monell liability. MCSO may be served through the Sheriff at 692 NW 30th Avenue, Ocala, Florida 34475.

15. At all times relevant hereto, Defendant SHERIFF BILLY WOODS, the elected Sheriff of Marion County, is, upon information and belief, an adult resident of Marion County, Florida, with an employment address for service of process at Marion County Sheriff's Office, 692 NW 30th Avenue, Ocala, Florida 34475. Sheriff Woods is sued in his official capacity as the final policymaker for MCSO.

16. At all times relevant hereto, Defendant Detective Kaileigh Walton, a detective with the Marion County Sheriff's Office, is, upon information and belief, an adult resident of Marion County, Florida, with an employment address for service of process at 692 NW 30th Avenue,

4

Ocala, Florida 34475. Detective Walton is sued in her individual and official capacities for actions taken under color of state law.

17.    At all times relevant hereto, Defendant Detective Henrik Osthed, a detective with the Marion County Sheriff's Office, is, upon information and belief, an adult resident of Marion County, Florida, with an employment address for service of process at 692 NW 30th Avenue, Ocala, Florida 34475. Detective Osthed is sued in his individual and official capacities for actions taken under color of state law.

18.    At all times relevant hereto, Defendant Corporal Leef Jean-Francois, a corporal with the Marion County Sheriff's Office, is, upon information and belief, an adult resident of Marion County, Florida, with an employment address for service of process at 692 NW 30th Avenue, Ocala, Florida 34475. Corporal Jean-Francois is sued in his individual and official capacities for actions taken under color of state law.

19.    At all times relevant hereto, Defendant Detective Clayton Shaw, a detective with the League City Police Department, is, upon information and belief, an adult resident of the State of Texas, with an employment address for service of process at 555 W. Walker Street, League City, Texas 77573. Detective Shaw is sued in his individual and official capacities for directing, coordinating, and initiating investigative actions into Florida without lawful authority, resulting in constitutional violations inside Plaintiff's home.

20.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## FACTUAL BACKGROUND

21.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far

5

above and incorporate same as if fully set forth at length herein.

22.    In December 2024, Defendant Detective Clayton Shaw of the League City Police Department ("LCPD") initiated contact with the Marion County Sheriff's Office ("MCSO") in Florida, requesting investigative assistance related to a Texas matter involving a minor. At no time did Shaw obtain a Florida warrant, judicial authorization, or interstate investigative authority.

23.    Acting on Shaw's request, MCSO deputies began conducting surveillance of Plaintiffs' home at 14515 SE 91st Court, Summerfield, Florida, despite having no Florida-issued warrant, subpoena, court order, or statutory authority to investigate on behalf of Texas law enforcement.

24.    MCSO deputies gathered information about Plaintiffs, their family, and their home, including monitoring comings and goings, without notifying Plaintiffs and without any lawful basis under Florida or federal law.

25.    On December 20, 2024, Defendant Detective Kaileigh Walton entered Plaintiffs' home and seized a cellular phone belonging to Plaintiff Franklin Duvall. The seizure occurred without a warrant, without consent, without exigent circumstances, and without Plaintiff Walsh's knowledge.

26.    Detective Walton then transferred the seized phone to Texas authorities, despite MCSO's own written policy (Legal Bulletin 2022-18), which expressly states that a warrant is required to search a phone even when lawfully seized.

27.    No 911 call, CAD entry, dispatch log, or incident report exists documenting any swatting complaint at Plaintiffs' address, and Defendants have never produced any such record. The 'swatting' narrative was a wholly fabricated ruse used as a pretext to justify investigative actions that lacked any lawful basis.

6

28.     Plaintiffs were never informed of the ongoing cross-state investigation, the surveillance of their home, or the prior seizure of Mr. Duvall's phone.

29.     On March 7, 2025, Defendants Walton and Henrik Osthed arrived at Plaintiffs' residence. They knocked repeatedly, then moved to the rear of the home, and forcibly entered without a warrant, without consent, and without any emergency or exigent circumstance.

30.     The forced entry caused physical damage to Plaintiffs' door, deadbolt, and frame, requiring repairs, lock replacements, and security upgrades.

31.     Plaintiff Walsh was not home at the time of the entry and had not authorized any person to enter her residence. Plaintiff Duvall was home but never provided a knowing, intelligent, and voluntary consent for the law enforcement officer to enter the residence.

32.     Once inside, deputies located Plaintiff Duvall, and seized him without a warrant, without probable cause, and without any lawful justification.

33.     Deputies handcuffed Franklin Duvall, detained him at first inside the home, and interrogated him while he was isolated. Subsequently, the officers placed Mr. Duvall into the back of an unmarked non-law enforcement type vehicle where he waited. They then called for a marked patrol car unit to come to the scene to transport Mr. Duvall to the MCSO Criminal Investigations Division.

34.     Deputies used the fabricated "swatting" narrative to pressure Franklin Duvall into making statements, despite knowing the narrative was false and unsupported by any evidence.

35.     Deputies then transported Mr. Duvall to the MCSO Criminal Investigations Division, where interrogation continued without counsel, and without any lawful basis for detention. After his interrogation at CID, Mr. Duvall was taken to the Marion County Jail, where he was booked and remained jailed there for twenty-one days until March 28, 2025.

36.     As a result of the unlawful seizure and interrogation, Franklin Duvall experienced

fear, confusion, humiliation, and ongoing emotional distress. He suffered sleep disturbances, anxiety, and a loss of any sense of safety within his own home. These harms were a direct and foreseeable result of Defendants' conduct.

37.     Plaintiff Walsh was not notified that her son had been seized, detained, or transported by law enforcement. She returned home to find signs of forced entry and discovered that her son had been taken.

38.     Plaintiff Walsh immediately experienced panic, fear, and confusion, followed by ongoing anxiety, insomnia, and emotional distress. She required counseling and incurred out-of-pocket expenses for treatment.

39.     The forced entry shattered Plaintiffs' sense of safety and privacy in their home, causing lasting emotional harm.

40.     Plaintiffs incurred costs for emergency repairs, replacement of locks, and installation of additional security measures to restore the safety of their residence.

41.     Throughout these events, MCSO deputies acted as agents of LCPD, carrying out investigative actions directed by Texas authorities despite lacking any statutory authority, warrant, or judicial oversight permitting such cross-state enforcement activity.

42.     Texas authorities, including Detective Shaw, directed and coordinated investigative actions inside Florida, including the seizure of property, surveillance of Plaintiffs' home, and the warrantless detention and interrogation of Plaintiff Franklin Duvall.

43.     At no time did any Defendant obtain a warrant, court order, or lawful authorization for the surveillance, entry, seizure, detention, or interrogation described herein.

44.     The actions of all Defendants resulted in the violation of Plaintiffs' constitutional rights, including their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

8

45. Defendants' conduct was not accidental, mistaken, or the product of miscommunication. Rather, the Florida and Texas defendants knowingly coordinated their actions, shared information, and acted jointly to carry out investigative steps inside Florida that they understood required warrants, judicial authorization, or statutory authority. Each Defendant acted with the purpose and intent to engage in investigative conduct that would foreseeably result in the warrantless entry into Plaintiffs' home, the seizure of their property, and the detention and interrogation of Plaintiff Duvall, thereby satisfying the state-action and joint-participation requirements of 42 U.S.C. § 1983.

## COUNT I
## <u>FOURTH AMENDMENT: UNLAWFUL ENTRY - 42 U.S.C. § 1983</u>
### *(Against Defendants Walton, Osthed, and MCSO)*

46. Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

47. The Fourth Amendment to the United States Constitution guarantees the right of individuals to be secure in their homes against unreasonable searches and seizures. Warrantless entry into a private residence is presumptively unconstitutional absent consent, exigent circumstances, or another narrowly defined exception.

48. At all times relevant, Detectives Walton and Osthed were acting under color of state law as sworn deputies of the Marion County Sheriff's Office ("MCSO").

49. On March 7, 2025, Detectives Walton and Osthed approached Plaintiffs' home and, after receiving no response to their knocking, moved to the rear of the residence and forcibly entered without a warrant, without consent, and without exigent circumstances.

50. No emergency existed, no threat to life or safety was present, and no lawful basis justified bypassing the warrant requirement.

51. The deputies' forced entry caused physical damage to Plaintiffs' door, deadbolt,

and frame, and resulted in the unlawful seizure and detention of Plaintiff Franklin Duvall inside the home.

52.    The entry was conducted for investigative purposes related to a Texas-based inquiry and not for any immediate safety concern, further confirming the absence of exigency.

53.    The actions of Detectives Walton and Osthed constituted an unreasonable search and seizure in violation of the Fourth Amendment.

54.    MCSO is liable under *Monell* because the unlawful entry was carried out pursuant to:

    a.  MCSO's failure to train deputies on interstate investigative cooperation and constitutional limits on assisting out-of-state agencies;

    b.  MCSO's custom of permitting warrantless home entries under pretextual or fabricated narratives; and

    c.  MCSO's deliberate indifference to deputies' repeated use of unconstitutional investigative tactics, including warrantless seizures of persons and property.

    d.  MCSO's policies, customs, and failures to supervise were the moving force behind the constitutional violations suffered by Plaintiff.

55.    As a direct and proximate result of Defendants' unlawful entry, Plaintiffs suffered property damage, emotional distress, loss of security in their home, and other compensable injuries. Plaintiff Franklin Duvall suffered illegal detention for hours at the Marion County Jail until he was eventually released that same evening at approximately 9 p.m.

56.    Plaintiffs seek compensatory damages, punitive damages against the individual defendants, attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

57.    To the extent this Count references policies, customs, or practices, such allegations

are pled solely to preserve municipal liability under Count V and are not asserted against individual defendants.

## COUNT II
## FOURTH AMENDMENT: UNLAWFUL SEARCH & SEIZURE
### *(Against All Florida Defendants)*

58.     Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

59.     The Fourth Amendment, as incorporated against the States through the Fourteenth Amendment, guarantees the right of individuals to be free from unreasonable searches and seizures of their persons, homes, and effects.

60.     At all times relevant, Defendants WALTON, OSTHED, JEAN-FRANCOIS, and other unknown MCSO personnel acted under color of state law when they entered Plaintiff's home, conducted searches, and seized persons and property without a warrant, without consent, and without exigent circumstances.

61.     On December 20, 2024, Defendant WALTON unlawfully entered Plaintiffs' home and temporarily seized a cell phone belonging to Plaintiff Duvall without a warrant, consent, or any lawful justification. In an effort to gather intelligence on Duvall, the deputies asked him to provide his user name for the app Discord. Once Duvall had logged onto his Discord account, Defendant WALTON took photos of the cell phone showing the Discord home display. At the end of this encounter, Duvall's phone was returned to him.

62.     On March 7, 2025, Defendants WALTON and OSTHED entered Plaintiffs' home by force, damaging their door, lock, and frame, despite having no warrant, no consent, and no exigent circumstances.

63.     Once inside, Defendants unlawfully seized Plaintiff Franklin Duvall, handcuffed him, detained him, and interrogated him without probable cause, and without legal authority. Mr.

11

Duvall was subsequently placed in an unmarked vehicle and then transferred to a marked patrol unit, transported to CID for interrogation, and subsequently taken to Marion County Jail where he was held without any legal justification for some twenty-one days until 9 p.m. on the night of March 28, 2025, when he was finally released.

64.    During this March 2025 encounter, the deputies seized and searched Mr. Duvall's cell phone without his knowing, voluntary, and intelligent consent to do so as he was responding to the fabricated swatting ruse.

65.    MCSO's own written policy, Legal Bulletin 2022-18, expressly states that cellular telephones require a warrant to search, even when lawfully seized, demonstrating that Defendants acted contrary to clearly established law and their own agency directives.

66.    Defendants' actions constituted an unreasonable search of Plaintiffs' home and an unreasonable seizure of both property and persons in violation of clearly established Fourth Amendment rights.

67.    Defendants further used a knowingly fabricated "swatting" narrative to justify their unlawful search and seizure, demonstrating deliberate misconduct and reckless disregard for Plaintiff's constitutional protections.

68.    Defendant MCSO, through its deputies and final policymakers, acted jointly and in concert with Texas authorities, including LCPD Detective Shaw, to conduct investigative actions inside Florida without statutory authority, warrants, or judicial oversight.

69.    The unlawful search and seizure were the direct and proximate result of MCSO's customs, practices, and failures in training, supervision, and oversight, including but not limited to:

      a.    Permitting deputies to conduct warrantless searches and seizures in non-exigent circumstances;

b. Allowing out-of-state agencies to direct investigative actions inside Florida without judicial authorization;

c. Failing to enforce written policies requiring warrants for the seizure and search of electronic devices; and

d. Endorsing or acquiescing in the use of fabricated narratives to justify unconstitutional intrusions.

70. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs suffered property damage, emotional distress, loss of privacy, fear for their safety, and financial losses including repair costs, counseling expenses, and security upgrades.

71. Defendants' conduct was willful, wanton, malicious, and in reckless disregard of Plaintiffs' federally protected rights, entitling them to compensatory damages, punitive damages (against individual defendants), attorneys' fees, and all other relief available under 42 U.S.C. § 1983.

72. At the time of the events described herein, it was clearly established that warrantless entry into a home without consent or exigent circumstances violates the Fourth Amendment; that warrantless seizure of property without probable cause or judicial authorization is unconstitutional; and that the seizure, custodial interrogation, and prolonged detention and jailing of Plaintiff Duvall without lawful authority violates both the Fourth and Fourteenth Amendments. These principles have been repeatedly affirmed by the Supreme Court and the Eleventh Circuit, such that any reasonable officer would have understood that the conduct alleged herein was unlawful. Accordingly, the individual defendants are not entitled to qualified immunity.

73. To the extent this Count references policies, customs, or practices, such allegations are pled solely to preserve municipal liability under Count IV and are not asserted against individual defendants.

13

## COUNT III
### UNLAWFUL DETENTION AND PROLONGED JAILING OF PLAINTIFF DUVALL - 42 U.S.C. § 1983
***(Against Defendants Walton, Osthed, Jean-Francois, and MCSO)***

74.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

75.    The Fourth Amendment prohibits the seizure and detention of any person without probable cause, a valid arrest warrant, or exigent circumstances. The Fourteenth Amendment prohibits arbitrary detention, prolonged confinement, and deprivation of liberty without due process of law.

76.    On March 7, 2025, Defendants WALTON, OSTHED, JEAN-FRANCOIS, and other MCSO personnel seized Plaintiff FRANKLIN EUGENE DUVALL JR. inside his home without a warrant, without probable cause, and without any lawful justification.

77.    After handcuffing and detaining Mr. Duvall inside the residence, Defendants placed him in an unmarked vehicle, transferred him to a marked patrol unit, transported him to the MCSO Criminal Investigations Division, interrogated him without counsel, and subsequently transported him to the Marion County Jail.

78.    Mr. Duvall was booked into the Marion County Jail and held in custody there from March 7, 2025, through March 28, 2025, a total of 21 days, without a warrant, without probable cause, without a charging document, and without any lawful authority.

79.    At no time during Mr. Duvall's 21-day jail detention did any Defendant obtain a warrant, file charges, or provide any legal basis for his confinement. On or about March 8, 2025, Mr. Duvall appeared briefly before a Judge at First Appearance Court and was simply told that he had an out of state warrant and what it was for. However, no extradition hearing was ever held, and Mr. Duvall was released from jail on March 28, 2025. No probable cause affidavit, arrest report, or judicial order authorizing detention exists, and Defendants have never produced any

14

such record.

80.    Defendants' conduct constituted an unlawful seizure and prolonged detention in violation of clearly established Fourth Amendment rights, including the right to be free from arrest and detention without probable cause.

81.    Defendants' conduct further violated Mr. Duvall's Fourteenth Amendment rights by depriving him of liberty without due process, subjecting him to arbitrary and prolonged confinement, and failing to provide any judicial review or procedural protections required when a person is detained by law enforcement.

82.    The unlawful detention was the direct and proximate result of MCSO's policies, customs, and failures in training and supervision, including but not limited to:

a.    permitting deputies to detain individuals without probable cause;

b.    failing to require judicial review or documentation for custodial detention;

c.    allowing deputies to act on behalf of out-of-state agencies without lawful authority;

d.    failing to train deputies on constitutional limits governing arrest, detention, and jail confinement; and

e.    ratifying unlawful detentions by failing to discipline or correct deputies who detain individuals without legal basis.

f.    Allowing the detention of Plaintiff Duvall in Marion County Jail with no legal justification for 21 days until his release on March 28, 2025.

83.    As a direct and proximate result of Defendants' unlawful detention, Mr. Duvall suffered loss of liberty, emotional distress, humiliation, fear, anxiety, reputational harm, and other damages to be proven at trial.

84.    Defendants' conduct was willful, wanton, malicious, and in reckless disregard of

15

Mr. Duvall's clearly established constitutional rights, entitling him to compensatory damages, punitive damages, attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

85.     Plaintiffs seek all damages and relief available under 42 U.S.C. § 1983 for the unlawful detention described in this Count.

**COUNT IV**
**<u>FOURTEENTH AMENDMENT: INVASION OF PRIVACY / SUBSTANTIVE DUE PROCESS</u>**
***(Against All Defendants)***

86.     Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

87.     The Fourteenth Amendment protects an individual's fundamental rights to privacy, bodily integrity, familial integrity, and freedom from arbitrary and conscience-shocking government intrusion.

88.     Plaintiffs BRITNI WALSH and FRANKLIN DUVALL possess a clearly established constitutional right to be free from unwarranted governmental intrusion into the sanctity of their home, their private affairs, and their familial relationships, including the right to control access to their residence.

89.     Defendants WALTON, OSTHED, JEAN-FRANCOIS, and other MCSO personnel, acting under color of state law, violated these fundamental rights by entering Plaintiffs' home without a warrant, without consent, and without any legitimate or lawful justification.

90.     Defendants' conduct was arbitrary, oppressive, and conscience-shocking, including but not limited to:

       a. conducting covert surveillance of Plaintiffs' home without judicial authorization;

       b. seizing property from inside their residence without a warrant;

16

    c.   fabricating a "swatting" narrative to justify investigative actions;

    d.   entering their home through the back door after repeated knocking;

    e.   damaging their door, lock, and frame;

    f.   seizing, handcuffing, and interrogating Plaintiff Duvall inside her home without probable cause;

    g.   transporting him to CID and continuing interrogation and later transferring him to Marion County Jail central booking where he was held until 9 p.m.; and

    h.   withholding information from Plaintiff Walsh regarding the seizure of her property and the detention of her son Plaintiff Franklin Duvall.

91.    These actions constitute an egregious and unjustified intrusion into Plaintiffs' private life, and their home, and were undertaken with deliberate indifference to their constitutional protections.

92.    Defendant SHAW and the CITY OF LEAGUE CITY, acting through its police department, directed, encouraged, and coordinated these investigative actions into Florida, knowing that no warrants, subpoenas, or judicial authority existed to justify the intrusion into Plaintiff's home or the seizure of her child.

93.    Defendants' actions further violated Plaintiffs' substantive due process right to bodily integrity and personal security by subjecting Plaintiff Duvall to handcuffing, detention, and interrogation without lawful justification, and by causing Plaintiff Walsh severe emotional distress, fear, and trauma upon discovering the forced entry and the disappearance of her adult son.

94.    The conduct of all Defendants was so arbitrary, abusive, and unjustified that it shocks the conscience and constitutes an egregious misuse of governmental authority.

95.    At the time of the events described herein, it was clearly established that individuals have a right to be free from arbitrary and conscience-shocking government intrusion;

and that warrantless, non-exigent entry into a home violates substantive due process when undertaken for investigative purposes. These principles were well-settled in Supreme Court and Eleventh Circuit precedent, such that any reasonable officer would have understood that the conduct alleged herein was unlawful.

96.     The municipal defendants, CITY OF LEAGUE CITY, LEAGUE CITY POLICE DEPARTMENT, and MARION COUNTY SHERIFF'S OFFICE, are liable under *Monell* because the constitutional violations were caused by their policies, customs, practices, failure to train, failure to supervise, and deliberate indifference to the rights of citizens subjected to cross-jurisdictional investigations.

97.     As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiffs suffered emotional distress, anxiety, fear, loss of familial security, damage to their home, financial losses, and ongoing psychological harm.

98.     Plaintiffs are entitled to compensatory damages, punitive damages against the individual defendants, declaratory relief, injunctive relief, and all other relief the Court deems just and proper.

**COUNT V**
**MONELL LIABILITY – MARION COUNTY SHERIFF'S OFFICE**

99.     Plaintiffs hereby repeat all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

100.     Defendant Marion County Sheriff's Office ("MCSO") is a suable entity under 42 U.S.C. § 1983 because the Sheriff is the final policymaker for law-enforcement operations in Marion County, Florida.

101.     Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipal entity is liable when a constitutional violation results from an official policy, widespread custom, deliberate indifference, or a failure to train or supervise that is the moving force behind the injury.

18

102.    The constitutional violations committed by MCSO deputies, including warrantless entry, unlawful search and seizure, seizure and prolonged detention of Plaintiff Duvall, fabricated investigative narratives, and cross-state investigative activity without jurisdiction, were undertaken pursuant to MCSO's policies, customs, practices, and failures in training and supervision.

103.    MCSO maintained a custom of assisting out-of-state agencies in investigative actions inside Florida without warrants, judicial oversight, or statutory authority, and without ensuring compliance with Florida or federal constitutional requirements.

104.    MCSO maintained a custom of permitting deputies to conduct warrantless entries into private homes in non-exigent circumstances, including the March 7, 2025, forced entry into Plaintiffs' residence.

105.    MCSO maintained a custom of seizing property without warrants, including electronic devices, and transferring such property to out-of-state agencies without judicial authorization, as occurred when Detective Walton seized and transferred Plaintiff Duvall's phone to Texas authorities.

106.    MCSO maintained a custom of relying on fabricated or pretextual narratives, including the false "swatting" claim, to justify investigative intrusions and to conceal the true purpose of cross-jurisdictional operations.

107.    MCSO failed to train deputies on:

   a.    constitutional limits on warrantless entry;

   b.    the requirement of probable cause and judicial authorization for searches and seizures;

   c.    the handling and seizure of electronic devices under Legal Bulletin 2022-18;

   d.    the constitutional protections afforded to minors during custodial interrogation;

19

and

    e.  the legal limits of cooperating with out-of-state agencies.

108. MCSO's failure to train and supervise deputies on these issues amounts to deliberate indifference, as the need for such training was obvious and the risk of constitutional violations was highly foreseeable.

109. MCSO's final policymakers, including Sheriff Billy Woods, ratified the unconstitutional conduct by:

    a.  permitting deputies to act on behalf of Texas authorities without warrants;

    b.  failing to discipline or correct deputies after the unlawful entry, seizure, and interrogation;

    c.  failing to enforce written policies requiring warrants for electronic devices; and

    d.  continuing to coordinate with LCPD despite clear constitutional violations.

110. The unconstitutional actions of MCSO deputies were not isolated incidents but were the direct result of MCSO's policies, customs, and deliberate indifference to the constitutional rights of Florida residents.

111. The constitutional violations suffered by Plaintiffs were the predictable and foreseeable result of MCSO's longstanding customs and failures. Prior incidents involving warrantless entries, improper cooperation with out-of-state agencies, and disregard of warrant requirements for electronic devices placed MCSO on actual or constructive notice that its deputies were likely to violate constitutional rights in the absence of corrective training or supervision. MCSO's deliberate indifference to this pattern of misconduct was the moving force behind the unlawful entry, seizure, and interrogation described herein, thereby satisfying the causation requirements for municipal liability under Monell.

112. MCSO's policies, customs, and failures in training and supervision were the

20

moving force behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights.

113. On information and belief, prior incidents involving warrantless entries, improper cross-jurisdictional cooperation, and failures to obtain warrants for electronic devices placed MCSO on actual or constructive notice that its training, supervision, and oversight practices were constitutionally deficient. Despite this notice, MCSO failed to implement corrective measures, reflecting deliberate indifference to the rights of Florida residents.

114. As a direct and proximate result of MCSO's unconstitutional policies and practices, Plaintiff suffered property damage, emotional distress, loss of familial integrity, invasion of privacy, financial losses, and other injuries.

115. Plaintiffs seek compensatory damages, attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

## COUNT VI
## MONELL LIABILITY – CITY OF LEAGUE CITY

116. Plaintiffs hereby repeat all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

117. Defendant City of League City, Texas ("League City") is a municipal corporation and a suable entity under 42 U.S.C. § 1983.

118. Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality is liable when a constitutional violation results from an official policy, widespread custom, deliberate indifference, or a failure to train or supervise that is the moving force behind the injury.

119. League City, acting through its police department and final policymakers, directed, encouraged, and coordinated investigative actions inside the State of Florida without jurisdiction, without warrants, and without judicial authorization, resulting in the constitutional violations described herein.

120. Detective Clayton Shaw, acting as an agent of League City and LCPD, initiated and directed cross-state investigative activity, including surveillance, property seizure, and the seizure and interrogation of Mr. Duvall, despite having no lawful authority to conduct or command law-enforcement operations in Florida.

121. League City maintained a policy, custom, or practice of permitting its officers to engage in investigative activity outside Texas without ensuring compliance with constitutional requirements, interstate cooperation laws, or the jurisdictional limits of Texas law enforcement.

122. League City maintained a custom of coordinating with out-of-state agencies in a manner that bypassed judicial oversight, including directing Florida deputies to seize property, interrogate minors, and enter private homes without warrants.

123. League City failed to train its officers, including Detective Shaw, on:

   a. the constitutional limits of cross-jurisdictional investigations;

   b. the requirement of warrants or judicial authorization before directing out-of-state searches or seizures;

   c. the constitutional protections afforded to minors during custodial interrogation; and

   d. the legal limits of interstate cooperation and the need for compliance with the laws of the receiving state.

124. League City's failure to train and supervise its officers on these issues amounts to deliberate indifference, as the need for such training was obvious and the risk of constitutional violations was highly foreseeable.

125. League City's final policymakers ratified the unconstitutional conduct by:

   a. permitting Detective Shaw to direct investigative actions inside Florida without jurisdiction;

b.  failing to discipline or correct Shaw after the unlawful seizure of property and the unlawful interrogation of a minor;

c.  continuing to coordinate with MCSO despite clear constitutional violations; and

d.  failing to implement policies governing interstate investigative cooperation.

126.    The unconstitutional actions of Detective Shaw and other League City personnel were not isolated incidents but were the direct result of League City's policies, customs, and deliberate indifference to the constitutional rights of individuals affected by its cross-state investigative practices.

127.    League City's policies, customs, and failures in training and supervision were the moving force behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights, including unlawful search, unlawful seizure, and invasion of privacy.

128.    On information and belief, prior incidents involving LCPD's participation in out-of-state investigations without warrants or judicial oversight placed League City on actual or constructive notice that its officers were likely to violate constitutional rights during cross-jurisdictional operations. Despite this notice, League City failed to implement corrective training or supervisory safeguards.

129.    As a direct and proximate result of League City's unconstitutional policies and practices, Plaintiffs suffered property damage, emotional distress, loss of familial integrity, invasion of privacy, financial losses, and other injuries.

130.    Plaintiffs seek compensatory damages, attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

**COUNT VII**
**FAILURE TO SUPERVISE / FAILURE TO TRAIN - 42 U.S.C. § 1983**
*(Against Sheriff Woods in His Official Capacity)*

131.    Plaintiffs hereby repeat all of the allegations and Exhibits contained in the

23

Complaint thus far above and incorporates the same as if fully set forth at length herein.

132. At all times relevant, Defendant Sheriff Billy Woods was the final policymaker for the Marion County Sheriff's Office ("MCSO") with respect to training, supervision, discipline, and operational policies governing deputies.

133. Supervisory officials may be held liable under 42 U.S.C. § 1983 when their failure to train or supervise amounts to deliberate indifference to the constitutional rights of persons with whom their subordinates come into contact.

134. Sheriff Woods had actual or constructive knowledge that MCSO deputies were engaging in conduct that posed a substantial risk of constitutional violations, including:

a. warrantless entries into private homes;

b. warrantless seizures of persons and property;

c. custodial interrogation of Plaintiff Duvall without voluntary consent or legal justification;

d. reliance on fabricated or pretextual narratives to justify investigative actions;

e. cross-jurisdictional investigative activity without statutory authority or judicial oversight; and

f. the transfer of seized property to out-of-state agencies without warrants.

135. Despite this knowledge, Sheriff Woods failed to implement adequate training, supervision, or corrective measures to prevent such misconduct.

136. Sheriff Woods failed to train MCSO deputies on:

a. the constitutional limits of warrantless entry;

b. the requirement of warrants for the seizure and search of electronic devices, as mandated by MCSO Legal Bulletin 2022-18;

c. the constitutional protections afforded suspects during custodial interrogation;

24

d.  the legal limits of cooperating with out-of-state agencies; and

e.  the need for judicial authorization before conducting searches or seizures on behalf of another jurisdiction.

137. Sheriff Woods' failure to train and supervise deputies on these issues amounts to deliberate indifference, as the need for such training was obvious and the risk of constitutional violations was highly foreseeable.

138. To the extent this Count references policies, customs, or practices, such allegations are pled solely to preserve municipal liability under Count V and are not asserted against individual defendants.

139. The constitutional violations suffered by Plaintiff, including unlawful entry, unlawful search and seizure, invasion of privacy, and interference with familial integrity, were the direct and proximate result of these supervisory failures.

140. As a result of Defendant's deliberate indifference, Plaintiffs suffered property damage, emotional distress, invasion of privacy, financial losses, and other injuries.

141. Plaintiffs seek compensatory damages, attorneys' fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

## COUNT VIII
## CONSPIRACY TO VIOLATE CIVIL RIGHTS - 42 U.S.C. § 1983
### (Against All Individual Defendants)

142. Plaintiffs hereby repeat all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

143. Under 42 U.S.C. § 1983, individuals acting under color of state law are liable when they conspire with one another to deprive a person of rights secured by the Constitution or federal law.

144. A civil-rights conspiracy requires:

25

   a.  an agreement between two or more persons;

   b.  to violate the plaintiff's constitutional rights;

   c.  an overt act in furtherance of the conspiracy; and

   d.  resulting injury.

145.    Each of these elements is satisfied here.

146.    Defendants Walton, Osthed, Jean-Francois, and other MCSO personnel entered into an agreement with Detective Clayton Shaw of the League City Police Department to conduct investigative actions inside Florida without warrants, without jurisdiction, and without judicial oversight.

147.    The purpose of the agreement was to advance a Texas-based investigation by:

   a.  surveilling Plaintiff's home;

   b.  seizing property from inside the home;

   c.  entering the home without a warrant;

   d.  seizing and interrogating Plaintiff Duvall; and

   e.  concealing the true nature of the investigation from Plaintiffs.

148.    Defendants jointly adopted and repeated a fabricated "swatting" narrative as a pretext to justify their unlawful investigative actions and to mask the absence of any lawful basis for entry, seizure, or interrogation.

149.    Defendants communicated, coordinated, and acted in concert across state lines, with LCPD directing investigative steps and MCSO executing them inside Florida.

150.    Each Defendant committed overt acts in furtherance of the conspiracy, including but not limited to:

   a.  warrantless surveillance of Plaintiff's home;

   b.  warrantless seizure and transfer of a cell phone to Texas authorities;

26

    c.   warrantless forced entry into Plaintiff's residence;

    d.   seizure, handcuffing, interrogation, and jailing of Plaintiff Duvall;

    e.   transporting Duvall to CID and jailing him without legal justification; and

    f.   concealing the investigation from Plaintiff Walsh.

151.   Defendants acted with a shared objective: to conduct a cross-state investigation and obtain evidence and statements from Plaintiffs' family outside the bounds of the Fourth and Fourteenth Amendments.

152.   The conspiracy was facilitated by the absence of proper training, supervision, and oversight within both MCSO and LCPD, but the agreement itself was formed and executed by the individual defendants.

153.   At the time of the events described herein, it was clearly established that law enforcement officers may not conspire to violate an individual's Fourth or Fourteenth Amendment rights, including by conducting warrantless entries, seizures, or interrogations without lawful authority. These principles were well-settled in Supreme Court and Eleventh Circuit precedent, such that any reasonable officer would have understood that the conduct alleged herein was unlawful.

154.   As a direct and proximate result of Defendants' conspiracy, Plaintiffs suffered unlawful entry into their home, unlawful seizure of property, the unlawful seizure, interrogation and prolonged detention of Plaintiff Duvall, invasion of privacy, severe emotional distress, and property damage resulting in financial losses.

155.   Defendants' conduct was willful, malicious, and undertaken with reckless disregard for Plaintiff's constitutional rights, entitling her to compensatory damages and punitive damages against the individual defendants.

156.   Plaintiffs seek all available relief under 42 U.S.C. § 1983, including compensatory

27

damages, punitive damages, attorneys' fees under 42 U.S.C. § 1988, and any other relief the Court deems just and proper.

## VI. DAMAGES

157.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs suffered significant and compensable harm, including but not limited to:

    a.   property damage resulting from the forced entry into their home;

    b.   emotional distress, anxiety, fear, and loss of personal security;

    c.   out-of-pocket costs for counseling, therapy, and related mental-health treatment;

    d.   expenses incurred for repairing the damaged door, lock, and frame, as well as for necessary security upgrades;

    e.   loss of enjoyment, comfort, and peaceful use of their home;

    f.   punitive damages against the individual defendants for their willful, malicious, and reckless disregard of Plaintiffs' constitutional rights;

    g.   reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

    h.   pre- and post-judgment interest as permitted by law.

## PRAYER FOR RELIEF

158.   **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiffs BRITNI WALSH and FRANKLIN EUGENE DUVALL JR., demand judgment against Defendants, MARION COUNTY SHERIFF'S OFFICE, LEAGUE CITY POLICE DEPARTMENT, CITY OF LEAGUE CITY, SHERIFF BILLY WOODS, KAILEIGH WALTON, HENRIK OSTHED, LEEF JEAN-FRANCOIS, and CLAYTON SHAW in their official and individual capacities, and in the alternative, for general, compensatory, and punitive

28

damages, reasonable attorney's fees and costs of suit with interest pursuant to 42 U.S.C. 1988, and any further relief which the court may deem equitable and just.

## JURY DEMAND

159. Plaintiffs demand a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## CERTIFICATION

160. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

Dated: July 31, 2026

**LLG NATIONAL LAW GROUP**

Robert S. Mactavish
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*