**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**BRITNI WALSH and FRANKLIN EUGENE DUVALL JR.,**

**CASE NO: 5:26-cv-00545-JSM-PRL**

**Plaintiffs,**

**vs.**

**MARION COUNTY SHERIFF'S OFFICE, LEAGUE CITY POLICE DEPARTMENT, CITY OF LEAGUE CITY, SHERIFF BILLY WOODS, KAILEIGH WALTON, HENRIK OSTHED, LEEF JEAN-FRANCOIS, and CLAYTON SHAW in their official and individual capacities,**

**Defendants.**
**___________________________________/**

**DEFENDANTS LEAGUE CITY POLICE DEPARTMENT, CITY OF LEAGUE CITY, TEXAS, AND CLAYTON SHAW'S MOTION TO DISMISS**

Defendants League City Police Department ("LCPD"), City of League City, Texas ("League City"), and Detective Clayton Shaw ("Shaw") (collectively, the "Texas Defendants"), by and through undersigned counsel, appearing in a limited capacity and without waiving objections to this Court's lack of jurisdiction over these Defendants, respectfully move to dismiss Plaintiffs' Complaint (Doc. 1) as to them pursuant to Federal Rules of Civil Procedure 8, 12(b)(2), 12(b)(6), and 17(b), and in support state as follows:

## I. Introduction and Statement of the Case.

Plaintiffs Britni Walsh and Franklin Eugene Duvall, Jr. have sued eight named defendants pertaining to an alleged warrantless entry into Plaintiffs' home, seizure of property, and arrest of Plaintiff Franklin Duvall, Jr. (Compl., Doc. 1.) Plaintiffs allege the police activity was initiated in December 2024 by Defendant Detective Shaw of the League City, Texas Police Department when he "request[ed] investigative assistance related to a Texas matter involving a minor." (Compl. ¶ 22.) That is the only substantive allegation pertaining to Detective Shaw or the League City Police Department. Nonetheless, these Texas Defendants find themselves haled into a Florida federal court by way of a shotgun pleading vaguely alleging constitutional and civil conspiracy claims against "all Defendants."

By the Complaint's own account, everything that happened inside Plaintiffs' Florida residence, the surveillance, the December 2024 "seizure" of a cell phone, the March 2025 entry, and the handcuffing, interrogation, and detention of Mr. Duvall, was carried out exclusively by deputies of the Marion County Sheriff's Office ("MCSO"). (Compl. ¶¶ 23, 25, 29, 32-35.) League City's and Shaw's only alleged connection to this District is that, in December 2024, Shaw asked MCSO for "investigative assistance" on a Texas matter involving a minor. (Compl. ¶ 22.) What MCSO's own deputies allegedly did with that request, on their own authority and months later, is not something the Constitution permits Plaintiffs to bootstrap into personal jurisdiction over a Texas police department and a Texas police officer that took no independent action inside this state.

Plaintiffs recognize the jurisdictional problem. The Complaint devotes two paragraphs to justifying personal jurisdiction over "the Texas-based defendants" before it even reaches the parties section, invoking the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), to argue that these Defendants "expressly aimed" their conduct at Florida. (Compl. ¶¶ 7-8.) But the Supreme Court narrowed that very theory a decade ago in *Walden v. Fiore*, 571 U.S. 277 (2014), holding that a defendant's own contacts with the forum State, not the plaintiff's residence there and not the independent acts of third parties who happen to be in the forum, must supply the constitutional hook for personal jurisdiction. Measured against *Walden*, the jurisdictional allegations against League City and Shaw fail as a matter of law.

LCPD's problem is even more fundamental. By Plaintiffs' own admission, LCPD "is not a separate jural entity under Texas law." (Compl. ¶ 13.) Plaintiffs are correct, and that admission is independently dispositive as to LCPD: an entity with no independent legal existence cannot be sued, in this Court or any other, regardless of what conduct is attributed to it.

Even as to League City and Shaw, the Complaint fares no better on the merits. It is a serial-incorporation shotgun pleading of the kind the Eleventh Circuit has repeatedly condemned: each of its eight counts re-alleges everything that came before it, so that by Count VIII the reader must sort through more than 140 preceding paragraphs to determine which allegations apply to which of eight defendants. Stripped of that structure, the only count that names League City and Shaw with more than a conclusory label, Count IV, does not allege that either of them personally

entered Plaintiffs' home, searched anything, or seized anyone, and Count VI's municipal-liability claim against League City rests on nothing but an "on information and belief" assertion of unspecified "prior incidents" that *Twombly* and *Iqbal* do not permit.

The official-capacity claims against Detective Shaw duplicate the claims against the City. The remaining counts against these Defendants—substantive due process, Monell, and conspiracy—are conclusory and legally deficient even if jurisdiction existed. Qualified immunity independently bars the individual-capacity claims against Detective Shaw. For these reasons, and as set forth below, the Complaint should be dismissed as to LCPD, League City, and Shaw.

## II. Standard of Review.

Dismissal is justified when the allegations of the amended complaint clearly demonstrate that plaintiff does not have a claim. *Canon v. Clark*, 883 F. Supp. 718, 720 (S.D. Fla. 1995). To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true, but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188

(11th Cir. 2002). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* A complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne,* 326 F.3 d 1352, 1357 (11th Cir. 2003).

Where a defendant moves under Rule 12(b)(2) to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case of jurisdiction. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.,* 598 F.3d 802, 810 (11th Cir. 2010). Determining personal jurisdiction over a nonresident defendant is a two-step inquiry: first, whether jurisdiction is authorized under Florida's long-arm statute, and second, if so, whether its exercise comports with the Due Process Clause of the Fourteenth Amendment. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Under Florida's long-arm statute, before a court addresses the question of whether specific jurisdiction exists, the court must determine "whether the allegations of the complaint state a cause of action." *PVC Windoors, Inc.,* 598 F.3d at 810; *citing Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002); *see also 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co.,* 638 So.2d 149, 151 (Fla. 4th DCA 1994) (explaining that where the sole basis of jurisdiction is the commission of a tort in Florida, the court must necessarily determine whether the complaint states a cause of action in order to determine jurisdiction).

A defendant's capacity to be sued as a distinct legal entity is a threshold question separate from personal jurisdiction. *See* Fed. R. Civ. P. 17(b). A governmental

subdivision that has no independent legal existence under the law of the state that created it cannot be sued in its own name, whatever claims are asserted against it. *Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit…"). And "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Id.*

**III. Background as Pled.**

Plaintiffs Britni Walsh and Franklin Eugene Duvall, Jr., reside in Marion County, Florida. Compl. ¶¶ 10–11 (Doc. 1.) Walsh is alleged to be the homeowner. *Id.* ¶ 10. Duvall is alleged to be an adult co-tenant. *Id.* ¶ 11. The Complaint also refers to Duvall as Walsh's "son" and, in the municipal-liability counts, invokes training duties owed to "minors." *Id.* ¶¶ 37, 92–93, 107(d), 122, 123(c), 125(b).

The only concrete act attributed to Detective Shaw is that, in December 2024, he "initiated contact with the Marion County Sheriff's Office ('MCSO') in Florida, requesting investigative assistance related to a Texas matter involving a minor." *Id.* ¶ 22. Plaintiffs do not allege that Detective Shaw traveled to Florida, obtained a Florida warrant, entered Plaintiffs' home, seized any person or property, interrogated anyone, or booked anyone into the Marion County Jail. They do not identify any communication in which Detective Shaw directed Florida deputies to enter the home without a warrant or to hold Duvall for twenty-one days.

The physical acts described in the Complaint were performed by Florida deputies. Plaintiffs allege that MCSO conducted surveillance of the Summerfield

home, *id.* ¶¶ 23–24; that Detective Walton entered the home on December 20, 2024, and encountered Duvall's phone, *id.* ¶¶ 25–26, 61; and that Detectives Walton and Osthed entered the home on March 7, 2025, seized Duvall, transported him to CID, and caused him to be booked into the Marion County Jail, id. ¶¶ 29–35, 62–63, 76–78.

Those allegations are internally inconsistent in material respects. Paragraphs 25 and 26 allege that Walton seized Duvall's phone and "transferred the seized phone to Texas authorities." Paragraph 61 alleges that Walton photographed a Discord display and that "Duvall's phone was returned to him" at the end of the same encounter. Count I, paragraph 55, alleges that Duvall was released from jail "that same evening at approximately 9 p.m." Count III, paragraphs 78 and 79, allege that he was held for twenty-one days until March 28, 2025. Count IV, paragraph 90(g), returns to a same-day "9 p.m." release.

Plaintiffs further allege that at first appearance on or about March 8, 2025, "Mr. Duvall appeared briefly before a Judge … and was simply told that he had an out of state warrant and what it was for." *Id.* ¶ 79. They simultaneously allege that he was held "without a warrant, without probable cause, without a charging document, and without any lawful authority." *Id.* ¶ 78.

The claims pleaded against the Texas Defendants are Count IV (Fourteenth Amendment substantive due process and "invasion of privacy," against "all Defendants"), Count VI (Monell against the City), and Count VIII (section 1983 conspiracy against "all individual defendants"). Detective Shaw is sued in official and

individual capacities. *Id.* ¶ 19. LCPD is named separately even though Plaintiffs allege it "is not a separate jural entity under Texas law." *Id.* ¶ 13.

**IV. The Complaint Is a Shotgun Pleading.**

As an initial matter, the Complaint as pled is an impermissible shotgun pleading in which every paragraph and each cause of action is reincorporated into each subsequent cause of action. *See, e.g., Cesnik v. Edgewood Baptist Church,* 88 F.3d 902, 905 (11th Cir. 1996) (characterizing as a shotgun pleading a complaint that "was framed in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts."). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings," because they "waste scarce judicial resources, inexorably broaden[] the scope of discovery, wreak havoc on appellate court dockets, and undermine[] the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018) (citations omitted). The Complaint runs afoul of the basic pleading requirements under Rule 8 and should be stricken as a shotgun pleading. Fed. R. Civ. P. 8.

**V. The Court Lacks Personal Jurisdiction Over the Texas Defendants.**

League City and Shaw, and LCPD to the extent it is treated as a legal entity at all, are before a Florida federal court on the theory that they "expressly aimed" conduct at Florida because Shaw asked a Florida sheriff's office for investigative help. (Compl. ¶¶ 7-8.) That theory does not survive *Walden v. Fiore*, and it does not satisfy Florida's long-arm statute, either.

**1. The Texas Defendants Are Not Subject to General Jurisdiction in Florida.**

Florida's long-arm statute permits general jurisdiction only over a defendant "engaged in substantial and not isolated activity within this state." Fla. Stat. § 48.193(2). For an entity like a municipal corporation or its police department, general jurisdiction is in any event limited to the places where it is, in effect, "at home," ordinarily its place of formation and the seat of its government. *See, e.g., Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

League City and LCPD are organized under the laws of Texas with public offices in Galveston County, Texas. (Compl. ¶¶ 12-13.) The Complaint does not allege that any of these Defendants regularly conduct business, own property, employ staff, or otherwise maintain any continuous presence in Florida. Shaw's single, out-of-state request for investigative assistance in December 2024 is the only Florida-related conduct alleged against any of them, and an isolated contact of that kind is the antithesis of the substantial, continuous activity section 48.193(2) requires.

**2. The Complaint Does Not Establish Specific Jurisdiction Under Florida's Long-Arm Statute.**

Plaintiffs' remaining theory sounds in Florida Statutes section 48.193(1)(a)2, which reaches a defendant "committing a tortious act within this state." A nonresident's act performed entirely outside Florida can satisfy this prong only in narrow circumstances, generally where the defendant directs a communication, such as a letter, telephone call, or similar transmission, into Florida and the cause of action arises from that communication itself. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260

(Fla. 2002). Even affording Plaintiffs that generous reading, Shaw's December 2024 request for investigative help is not the conduct from which Plaintiffs' claims arise. Plaintiffs' claims arise from the alleged warrantless entry, seizure, and detention carried out by MCSO, on their own authority, using their own judgment, nearly three months later. (Compl. ¶¶ 29, 32-35.) That chain of causation is broken by independent, intervening conduct by a different sovereign's law-enforcement agency, acting under its own chain of command.

Furthermore, before the Court addresses the question of whether specific jurisdiction exists, it must first determine whether the complaint states a cause of action at all. *PVC Windoors, Inc.,* 598 F.3d at 810. As addressed in greater detail below, the instant Complaint fails to state a cause of action against the Texas Defendants.

**3. Exercising Jurisdiction Over These Defendants Would Violate Due Process.**

Due process requires that a defendant has "minimum contacts" with the forum such that maintaining suit there does not offend traditional notions of fair play and substantial justice, and that the defendant has purposefully availed itself of the forum such that it should reasonably anticipate being haled into court there. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). Critically, the relationship must arise out of contacts that the defendant himself creates with the forum State, not out of the "random, fortuitous, or attenuated" contacts of a plaintiff or a third party. *Walden*, 571 U.S. at 284, 286 (*quoting Burger King*, 471 U.S. at 475).

*Walden* rejects the jurisdictional theory Plaintiffs advance here. The Complaint alleges that the Texas Defendants "expressly aimed their conduct at Florida, knowing that their investigative directives would be executed inside Plaintiffs' home," and that under *Calder v. Jones* "the focal point of Defendants' conduct and the resulting harm was Florida." (Compl. ¶ 8.) But in *Calder*, jurisdiction was proper in California because the defendant reporters themselves wrote and edited the allegedly defamatory article, and the article itself, the very instrumentality of the tort, had its largest circulation in California, the plaintiff's home state and the place she would predictably suffer the reputational injury. *Calder*, 465 U.S. at 788-89. *Walden* held that *Calder* does not extend jurisdiction to every case where a defendant's out-of-forum conduct foreseeably affects a plaintiff who happens to live in the forum. "The plaintiff cannot be the only link between the defendant and the forum," and "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

Applied here, Shaw's alleged conduct consists of a single request for investigative assistance communicated from Texas to a Florida agency in December 2024. (Compl. ¶ 22.) He is not alleged to have traveled to Florida, entered Plaintiffs' home, seized anything, spoken with either Plaintiff, or personally directed the specific March 7, 2025 entry that gives rise to nearly every claim in this case. What connects Shaw to Florida, on the Complaint's own telling, is not anything he did here, but what MCSO's own deputies independently chose to do, months later, under their authority

as Florida officers subject to their own agency's policies. That is precisely the theory *Walden* forecloses: injury occurring in the forum because of the independent acts of others, or because that is where the plaintiff happens to reside, does not substitute for the defendant's own purposeful contacts with the forum. 571 U.S. at 289-91.

The claims against League City are weaker still. The Complaint alleges no conduct by League City independent of Shaw's; the jurisdictional theory as to the municipality and its police department is entirely derivative of the theory as to their employee. (Compl. ¶¶ 119-120.) A Texas municipality and its police department cannot be haled into a Florida court based solely on one detective's single out-of-state request to a different sovereign's law-enforcement agency, particularly where the resulting Florida conduct was carried out entirely by that other sovereign's own officers under their own authority.

Even if minimum contacts existed, which they do not, the traditional notions of fair play and substantial justice weigh against jurisdiction. Texas has the regulatory interest in the training and supervision of League City officers. The witnesses to Detective Shaw's communications are in Texas. Florida's interest is in regulating its own deputies, who are already before this Court. Requiring a Texas city and a Texas detective to defend in the Middle District of Florida a case about a Florida home entry they did not attend would not comport with fair play and substantial justice.

The Court should dismiss Detective Shaw and League City for lack of personal jurisdiction. Merits discovery as to these Defendants should be stayed pending that determination. If the Court concludes that jurisdictional facts are genuinely disputed,

any jurisdictional discovery should be limited to Detective Shaw's contacts with the State of Florida.

## VI. League City Police Department Is a Municipal Subdivision and Is Not a Separate Legal Entity Capable of Being Sued.

Capacity to sue or be sued is governed by Rule 17(b). Whether a municipal department is a legal entity with the capacity to be sued is determined by the law of the state that created it. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991); *Dean*, 951 F.2d at 1214. "In order for a plaintiff to sue a city department, it must enjoy a separate legal existence." *Darby*, 939 F.2d at 313 (internal quotation marks omitted). League City is a Texas home-rule municipality. Tex. Loc. Gov't Code Ann. §§ 5.004, 51.072. Under Texas law, LCPD is a department of the City, not a separate body politic. A Texas municipal police department "no more can proceed [as a party] than it could against the accounting department of a corporation." *Darby,* 939 F.2d at 313–14.

Federal courts applying Texas law have dismissed this Department on this ground. In *Cohen v. League City Police Department*, No. 3:08-cv-174, 2008 WL 2963987, at *2 (S.D. Tex. July 16, 2008), the court held that "The League City Police Department does not qualify as an entity with capacity under the rules because it cannot sue or be sued." In *Perdomo v. City of League City*, No. 3:24-cv-00129 (S.D. Tex. 2025), the court again dismissed LCPD because the plaintiff failed to plead facts showing that LCPD is a separate jural entity from the City.

The Eleventh Circuit follows the same capacity rule. "Sheriff's departments and police departments are not usually considered legal entities subject to suit." *Dean*, 951 F.2d at 1214. Plaintiffs cannot avoid that rule by filing in Florida a claim against a Texas department that Texas law does not recognize as a suable entity.

Plaintiffs concede the point. They allege that LCPD "is a municipal entity of the City of League City" and, in the next sentence, that "[a]lthough not a separate jural entity under Texas law, it is named to ensure full notice and clarity of the allegations." Compl. ¶ 13. Notice is not capacity. Naming a non-entity "for notice" does not create a party the Court can enter judgment against. All claims against League City Police Department should be dismissed with prejudice.

## VII. Official Capacity Claims against Detective Shaw are Redundant of the Claims against League City.

A suit against a municipal officer in his official capacity is a suit against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). When the municipality is also named, official-capacity claims against the employee are duplicative and are properly dismissed. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Detective Shaw is named in official and individual capacities. Compl. ¶ 19. League City is named as a defendant and is the subject of a dedicated *Monell* count. The official-capacity claims against Detective Shaw should be dismissed.

## VIII. In the Alternative, the Complaint Fails to State a Claim against the Texas Defendants.

### 1. Detective Shaw did not participate in any constitutional violation.

Individual liability under section 1983 requires that the defendant personally participated in, or caused, the constitutional deprivation. *Iqbal*, 556 U.S. at 676; *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Detective Shaw is not alleged to have entered Plaintiffs' home, seized a phone, handcuffed Duvall, interrogated him, transported him, or booked him. The Complaint's verbs—"directed," "coordinated," "initiated," "encouraged"—are conclusions. The only well-pleaded act is a December 2024 request for investigative assistance. Compl. ¶ 22. The alleged forced entry and detention occurred in March 2025 and were executed by MCSO. A request that a sister agency investigate a lead is not a constitutional violation, and it is not personal participation in a warrantless entry three months later.

**2. Detective Shaw is entitled to qualified immunity.**

Qualified immunity shields a government official from damages unless the plaintiff pleads facts showing the violation of a constitutional right that was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The right must be sufficiently clear that every reasonable official would understand that what he is doing violates that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks omitted). Existing precedent must place the statutory or constitutional question "beyond debate." *Id.*

No such precedent exists here. Plaintiffs identify no case holding that an out-of-state detective violates the Fourth or Fourteenth Amendment by asking another agency to assist with an investigation originating in the requesting officer's jurisdiction. The Complaint itself supplies a facially legitimate purpose: "a Texas matter involving

a minor." Compl. ¶ 22. A reasonable officer in Detective Shaw's position would not have understood that a request for assistance was unconstitutional. Qualified immunity independently requires dismissal of the individual-capacity claims.

**3. Count IV is not a viable substantive-due-process claim.**

Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Albright v. Oliver*, 510 U.S. 266, 273 (1994). The conduct underlying Count IV is a home entry, a search, a seizure of a person, and a detention. Those are Fourth Amendment claims. *Id.* They are already pleaded in Counts I through III against the Florida defendants. Count IV is a mislabeled Fourth Amendment count.

The "familial integrity" theory fails for an additional reason. Duvall is pleaded as an adult co-tenant. Compl. ¶ 11. There is no constitutional right of a parent to notice before law enforcement seizes an adult. Paragraph 92's reference to "the seizure of her child" cannot be reconciled with the party allegations. Count IV should be dismissed as to the Texas Defendants.

**4. Count VI does not sufficiently plead *Monell* liability against the City.**

A municipality is not vicariously liable under section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff must plead an official policy or a widespread custom attributable to a final policymaker that was the moving force behind a constitutional violation. *Id.* at 694. A failure-to-train claim requires deliberate

indifference. *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989). Deliberate indifference ordinarily requires a pattern of similar constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). The "single-incident" theory is reserved for the rare case in which the need for training is so obvious that a pattern is unnecessary—i.e., arming officers without training them in the use of deadly force. *Id.* at 63–64; *Gold v. City of Miami*, 151 F.3d 1346, 1350–52 (11th Cir. 1998).

Count VI does not meet that standard. It does not identify a written policy. It does not name a final policymaker. It does not describe any training curriculum. It alleges a "custom" of "permitting" out-of-state investigative activity and "coordinating with out-of-state agencies in a manner that bypassed judicial oversight." Compl. ¶¶ 121–22. Those are labels. The only alleged "notice" is the assertion that, "on information and belief, prior incidents" involving LCPD's participation in out-of-state investigations placed the City on notice. *Id.* ¶ 128. No incident is identified. No date is given. No victim is named. The Eleventh Circuit has rejected that form of superficial pleading. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1328–29 (11th Cir. 2015).

Causation fails independently. A December 2024 request for assistance is not the moving force behind a March 2025 forced entry and a jail stay by deputies of a different sovereign state. Count VI should be dismissed.

**5. Count VIII does not sufficiently plead a conspiracy.**

A section 1983 conspiracy requires an agreement to violate constitutional rights, an overt act, and an underlying constitutional violation. *Grider v. City of Auburn*, 618

F.3d 1240, 1260 (11th Cir. 2010). The Complaint alleges that Detective Shaw and MCSO deputies "entered into an agreement" to conduct "investigative actions" in Florida without warrants. Compl. ¶ 146. It does not allege what "investigative actions" were agreed upon, and specifically fails to allege any actions that would require a warrant. It also does not allege when the agreement was formed, what was said, or that Detective Shaw agreed that Florida deputies would enter a home without a warrant or hold Duvall for three weeks. Parallel activity and the word "coordinated" do not plead a constitutional conspiracy. *Twombly*, 550 U.S. at 556–57. Ordinary interstate law-enforcement cooperation is not a conspiracy. Count VIII should be dismissed as to Detective Shaw.

**6. Punitive damages are unavailable against the City.**

A municipality is immune from punitive damages under section 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). The demand for punitive damages against the City should be dismissed or stricken.

**IX. Conclusion.**

The Court should dismiss League City and Detective Shaw for lack of personal jurisdiction; dismiss LCPD with prejudice as a non-jural municipal subdivision; dismiss the official-capacity claims against Detective Shaw as redundant; and, in the alternative, dismiss Counts IV, VI, and VIII as to the Texas Defendants for failure to state a claim, including on qualified-immunity grounds as to Detective Shaw. The demand for punitive damages against the City should also be dismissed. Merits discovery as to these Defendants should be stayed pending the jurisdictional ruling.

WHEREFORE, the Texas Defendants request this Court grant the relief requested herein, and for such other relief as the Court deems just and proper.

**Local Rule 3.01(g) Certification**

Pursuant to M.D. Loc. R. 3.01(g), on September 17, 2026, undersigned counsel spoke with counsel for the Plaintiffs, Mr. Robert Mactavish, Esq., by telephone to discuss the instant motion. Plaintiffs object to the relief requested herein.

**Certification Under Penalty of Perjury That Artificial Intelligence Was Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: Westlaw Advantage was used to assist with legal research and Claude was used to review the draft brief for typographical and grammatical errors. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand

for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

**I HEREBY CERTIFY** that on September 17, 2026 the foregoing was electronically filed with the clerk of court by using the CM/ECF system which will send a notice of electronic filing to Robert S. Mactavish, Esq., 3003 N. Central Ave., Ste. 685, Phoenix, AZ 85012.

*/s/ Joshua B. Walker*

JOSHUA B. WALKER, ESQ.
Florida Bar No. 0047614
Walker, Revels, Greninger, PLLC
189 S. Orange Avenue, Suite 1600
Orlando, FL 32801
Tel: 407-789-1830 Fax: 321-251-2990
Attorney for Defendants City of League City and Clayton Shaw