**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**BRITNI WALSH and FRANKLIN EUGENE DUVALL JR.,**

**CASE NO: 5:26-cv-00545-AGM-PRL**

**Plaintiffs,**

**vs.**

**MARION COUNTY SHERIFF'S OFFICE, LEAGUE CITY POLICE DEPARTMENT, CITY OF LEAGUE CITY, SHERIFF BILLY WOODS, KAILEIGH WALTON, HENRIK OSTHED, LEEF JEAN-FRANCOIS, and CLAYTON SHAW in their official and individual capacities,**

**Defendants.**
______________________________________/

**DEFENDANTS CITY OF LEAGUE CITY AND CLAYTON SHAW'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants City of League City ("League City") and Detective Clayton Shaw ("Shaw") (collectively, the "Texas Defendants"), by and through undersigned counsel, appearing in a limited capacity and without waiving objections to this Court's lack of jurisdiction over them, respectfully move to dismiss Plaintiffs' First Amended Complaint (Doc. 37) as to them pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and in support state as follows.

## I. Introduction and Statement of the Case.

This Court dismissed Plaintiffs' original Complaint without prejudice and granted leave to amend. (Doc. 36.) Plaintiffs' First Amended Complaint ("Amended Complaint") dropped the claims against League City Police Department and narrowed the claims against the remaining Texas Defendants. However, the allegations still fail to allege sufficient conduct to implicate personal jurisdiction over the Texas Defendants and otherwise fail to state a valid claim for relief.

Detective Shaw's only alleged conduct remains something he did from Texas: he identified Plaintiff Duvall's Florida residence and digital accounts to the Marion County Sheriff's Office ("MCSO"), asked MCSO to assist a Texas investigation, discussed with MCSO personnel how information might be obtained from Duvall, and supplied the Texas warrant on which MCSO says it relied. (Am. Compl. ¶¶ 17-20, 25, 36.) Every act that actually invaded Plaintiffs' home, searched anything, seized anyone, or detained Mr. Duvall for twenty-one days, was carried out exclusively by MCSO's own deputies, whom neither League City nor Shaw employs, supervises, or controls. (Am. Compl. ¶¶ 27-34, 62-68, 75-90.) Tellingly, the Amended Complaint does not assert any Fourth Amendment claim against Shaw at all; Counts I through III are pled solely against the MCSO deputies, and Shaw appears only in Count VII's conspiracy claim. (Am. Compl. ¶¶ 43, 55, 73, 155.)

That pleading structure confirms what *Walden v. Fiore*, 571 U.S. 277 (2014), forecloses: a Texas detective's out-of-state communications to a Florida agency, even communications that include a suggested investigative approach and a warrant, do not supply the "minimum contacts" that due process requires when the conduct that actually invaded Plaintiffs' home and liberty was performed by that Florida agency's own officers. The Amended Complaint's jurisdictional allegations against Shaw are more elaborately worded than before (Am. Compl. ¶ 7), but they describe the same thing: communications from Texas, followed by independent action in Florida by officers who are not these Defendants' agents.

Even if jurisdiction existed, the Amended Complaint does not state a claim against either Defendant. Count V's municipal liability claim against League City rests on the same "upon information and belief" recitation of unspecified "prior complaints" that *Twombly* and *Iqbal* do not permit, and it cannot satisfy *Monell's* rigorous causation requirement where the only constitutional violations pled in this case, Counts I through III, were allegedly inflicted entirely by a different governmental entity's deputies. Count VII's conspiracy claim against Shaw remains, at best, an inference of agreement drawn from ordinary interstate law enforcement cooperation, which the Eleventh Circuit has held insufficient. Shaw is independently entitled to qualified immunity. For these reasons and as set forth below, the

Amended Complaint should be dismissed as to League City and Shaw, with prejudice.

## II. Relevant Allegations.[1]

Plaintiffs Britni Walsh and Franklin Eugene Duvall, Jr. are adult residents of Marion County, Florida, who reside at 14515 SE 91st Court, Summerfield, Florida. (Am. Compl. ¶¶ 9-10.) League City is a Texas municipal corporation that may be served at its public office in League City, Texas. (*Id.* ¶ 11.) Shaw is a detective employed by the League City Police Department and is sued in his individual capacity. (*Id.* ¶ 16.)

On December 19, 2024, Shaw contacted MCSO concerning a Texas sexual offense investigation and identified the Florida subject, his residence, a Discord username, an email address, and a suspected telephone number. (*Id.* ¶¶ 17-18.) MCSO, not Shaw, thereafter undertook investigative activity in Florida. (*Id.* ¶ 19.) MCSO personnel had discussed with Shaw how to obtain information from Duvall "without making his suspect aware of Detective Shaw's investigation," and the Amended Complaint alleges that MCSO itself, not Shaw, "determined that asking questions concerning an alleged 'swatting' report would be the best way to obtain information." (*Id.* ¶ 20.) On January 8, 2025, an MCSO detective, using that pretext,

[1] For purposes of this motion only, League City and Shaw accept the Amended Complaint's factual allegations as true, but only as they are actually pled.

conducted a non-custodial encounter with Duvall at his residence and viewed and photographed information on his phone. (*Id.* ¶¶ 20-22, 57-60.)

On March 7, 2025, MCSO Detectives Walton and Osthed returned to the residence in connection with "a Texas fugitive warrant," entered without a search warrant, consent, or exigent circumstances, located and handcuffed Duvall, seized his phone, and transported him to MCSO's Criminal Investigations Division and then to the Marion County Jail. (*Id.* ¶¶ 25-31, 45-50, 62-64.) The Amended Complaint alleges Shaw "obtained the Texas warrant" relied upon by MCSO (*id.* ¶ 36), and alleges that MCSO's own written policies required deputies to verify the underlying charge, bond, and the originating agency's continuing agreement to extradite before proceeding with a fugitive arrest, and to reassess continued detention once an agency withdrew its extradition request. (*Id.* ¶¶ 37, 78, 96-101.) Plaintiffs allege MCSO did not comply with its own policies: Texas withdrew the detainer on March 25, 2025, and the Florida court authorized Duvall's release that day, yet MCSO held him three additional days, until March 28, 2025. (*Id.* ¶¶ 32-35, 82-90.) Neither Shaw nor any League City employee is alleged to have had any role in Duvall's continued confinement after March 7, 2025.

Of the Amended Complaint's seven counts, Counts I through III allege Fourth Amendment violations solely against MCSO Detectives Walton, Osthed, and Jean-Francois. (*Id.* ¶¶ 43, 55, 73.) Count IV alleges *Monell* liability against Sheriff Billy

Woods in his official capacity, again based entirely on MCSO's own policies and training. (*Id.* ¶¶ 93-122.) Count V alleges *Monell* liability against League City, premised on Shaw's having "acted within the scope of his duties as a League City police detective" and on League City's alleged failure to train its officers regarding interstate investigative cooperation; its only notice allegation is that, "upon information and belief," League City "had received notice, through prior complaints, civil rights litigation, administrative proceedings, judicial proceedings, and other reports," without identifying any such complaint, litigation, proceeding, or report. (*Id.* ¶¶ 123-139.) Count VI alleges a failure-to-train claim against Sheriff Woods, again directed at MCSO. (*Id.* ¶¶ 140-154.) Count VII alleges a civil conspiracy against Shaw, Walton, Osthed, and Jean-Francois, asserting that "communications, coordinated investigative activities, and interagency actions" support "the reasonable inference that Defendants reached an understanding." (*Id.* ¶¶ 155-168.) No count names League City or Shaw for the underlying unlawful entry, search, or detention.

## III. Standard of Review.

Dismissal is justified when the allegations of the amended complaint clearly demonstrate that plaintiff does not have a claim. *Canon v. Clark*, 883 F. Supp. 718, 720 (S.D. Fla. 1995). To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true, but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* A complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003).

Where a defendant moves under Rule 12(b)(2) to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case of jurisdiction. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.,* 598 F.3d 802, 810 (11th Cir. 2010). Determining personal jurisdiction over a non-resident defendant is a two-step inquiry: first, whether jurisdiction is authorized under Florida's long-arm statute, and second, if so, whether its exercise comports with the Due Process Clause of the Fourteenth Amendment. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Under Florida's long-arm statute,

before a court addresses the question of whether specific jurisdiction exists, the court must determine "whether the allegations of the complaint state a cause of action." *PVC Windoors, Inc.,* 598 F.3d at 810; *citing Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002); *see also 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co.,* 638 So.2d 149, 151 (Fla. 4th DCA 1994) (explaining that where the sole basis of jurisdiction is the commission of a tort in Florida, the court must necessarily determine whether the complaint states a cause of action in order to determine jurisdiction).

## IV. Argument.

### A. This Court Lacks Personal Jurisdiction Over League City and Detective Shaw.

League City and Shaw are before this Court on the theory that Shaw "purposefully directed investigative conduct toward Florida" and that his "Florida-directed conduct constitutes a tortious act within Florida" under Fla. Stat. § 48.193(1)(a)2. (Am. Compl. ¶ 7.) The Amended Complaint's jurisdictional allegations may have expanded upon those in the original Complaint, but they describe the same category of conduct that does not satisfy Florida's long-arm statute or due process.

Florida's long-arm statute permits general jurisdiction over a defendant "engaged in substantial and not isolated activity within this state." Fla. Stat. § 48.193(2). For a municipal corporation, general jurisdiction is in any event limited

to the places where it is, in effect, "at home," ordinarily its place of formation and the seat of its government. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). League City is organized under the laws of Texas with its public office in League City, Texas. (Am. Compl. ¶ 11.) The Amended Complaint does not allege that League City or Shaw regularly conducts business, owns property, employs staff, or otherwise maintains any continuous presence in Florida. The December 2024 contact and its aftermath, confined as they are to a single investigation, are the antithesis of the substantial, continuous activity section 48.193(2) requires.

The Amended Complaint also does not establish specific jurisdiction under Florida's Long-Arm Statute. Plaintiffs' theory sounds in Fla. Stat. § 48.193(1)(a)2, which reaches a defendant "committing a tortious act within this state." A nonresident's communications directed into Florida, telephone calls, letters, or similar transmissions, can satisfy this prong, but only where the cause of action actually arises from those communications. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Here, the causes of action pled against Shaw and League City do not arise from Shaw's communications themselves; they arise from the allegedly warrantless entry, search, seizure, and twenty-one day detention that MCSO's deputies carried out in Florida using their own judgment, under their own agency's policies, and in a manner the Amended Complaint alleges departed from those very policies. (Am. Compl. ¶¶ 37-38, 78, 96-101.) Shaw's communications were not the

instrumentality of the alleged constitutional injury; MCSO's independent execution was.

This remains true even crediting the Amended Complaint's new allegation that MCSO personnel discussed with Shaw "how to obtain information from Duvall," and that "MCSO personnel determined that asking questions concerning an alleged 'swatting' report would be the best way to obtain information." (*Id.* ¶ 20; *see also id.* ¶ 127.) By Plaintiffs' own telling, it was MCSO, not Shaw, that selected and executed the specific investigative technique used on Mr. Duvall in his own home. Shaw's alleged contribution was limited to a discussion from Texas and a Texas warrant; the decision to use a pretextual "swatting" narrative, to enter without a search warrant three months later, were MCSO's own choices, made in Florida, under Florida officers' own authority. A defendant does not commit a tortious act within Florida merely because a Florida agency, acting on its own judgment, later allegedly commits one.

Before reaching specific jurisdiction, the Court must also determine whether the Amended Complaint states a cause of action at all, because where the sole basis for jurisdiction is the commission of a tort in Florida, that threshold determination and the jurisdictional inquiry merge. *PVC Windoors, Inc.,* 598 F.3d at 810 (citing *Wendt*, 822 So. 2d at 1260). As explained below, the Amended Complaint does not

state a claim against either League City or Shaw, which independently defeats this basis for jurisdiction.

Furthermore, exercising jurisdiction over League City and Shaw would violate Due Process requirements that a defendant have "minimum contacts" with the forum such that the defendant has purposefully availed himself of the forum's benefits and could reasonably anticipate being haled into court there. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75 (1985). Critically, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," not out of the "random, fortuitous, or attenuated" contacts of a plaintiff or a third party, and a court must look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore,* 571 U.S. 277, 284-85 (2014) (quoting *Burger King*, 471 U.S. at 475). The unilateral activity of another party or a third person is not an appropriate consideration in that analysis. *Id.* at 286.

*Walden* squarely controls here. The petitioner in *Walden*, a Georgia-based DEA agent, searched the respondents' belongings at an Atlanta airport, seized cash, and helped draft a probable cause affidavit used to seek its forfeiture, conduct the respondents alleged was intended to, and did, cause them injury in Nevada, where they lived. 571 U.S. at 279-81. The Supreme Court held Nevada courts lacked personal jurisdiction, because the agent's own conduct occurred entirely in Georgia;

the fact that his actions "affected plaintiffs with connections to the forum State" did not create the necessary minimum contacts. *Id.* at 291. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. "[M]ere injury to a forum resident is not a sufficient connection to the forum." Id.

Shaw, like the agent in *Walden*, never traveled to Florida, never entered Plaintiffs' home, never searched anything, never seized anyone, and never spoke to either Plaintiff. What connects Shaw to Florida is not anything he did here, but what MCSO's deputies independently chose to do, using their own investigative technique, their own warrant analysis, and their own custodial decisions, including decisions the Amended Complaint alleges violated MCSO's own policies. (Am. Compl. ¶¶ 20, 37-38, 78, 96-101.) That is the same theory *Walden* rejects: injury occurring in the forum because of the independent acts of others does not substitute for the defendant's own purposeful contacts with the forum. 571 U.S. at 289-91.

*Calder v. Jones,* 465 U.S. 783 (1984), does not rescue Plaintiffs' theory. In *Calder*, California jurisdiction was proper because the defendants themselves wrote and edited the allegedly defamatory article, and the article itself, the instrumentality of the tort, was circulated into California by the defendants' own conduct. *Id.* at 788-89. Here, Shaw authored no instrumentality that was itself deployed against Plaintiffs in Florida. The warrantless entry, the search of Duvall's phone, his seizure,

and his detention were independent acts performed by MCSO's own deputies inside Florida, not documents or communications that Shaw sent into the state and that themselves caused the harm.

Furthermore, the Amended Complaint alleges no conduct by League City independent of Shaw's; its theory of jurisdiction over the municipality rests entirely on Shaw having acted "within the scope of his duties as a League City police detective." (Am. Compl. ¶ 126.) A municipal employer's contacts with a forum, for jurisdictional purposes, can rise no higher than its employee's own forum directed conduct. If Shaw's conduct does not satisfy *Walden*, as set forth above, League City's derivative theory necessarily fails as well, and fails doubly: League City's claimed connection to Florida depends first on imputing Shaw's conduct to it, and second on treating MCSO's own, independent execution, performed by deputies who are not League City's employees or agents in any sense, as though it were League City's own conduct. Neither step is permissible under *Walden*, and a Texas municipality cannot be haled into a Florida court based on its detective's out-of-state request to a different sovereign's law enforcement agency, where the resulting Florida conduct was carried out entirely by that other sovereign's own officers under their own authority.

Even if minimum contacts existed, which they do not, traditional notions of fair play and substantial justice weigh against jurisdiction. Texas has the regulatory

interest in the training and supervision of League City's officers, and the witnesses to Shaw's communications and his acquisition of the Texas warrant are in Texas. Florida's interest lies in regulating its own deputies, who remain before this Court on Counts I through IV and VI. Requiring a Texas municipality and a Texas detective to defend, in the Middle District of Florida, claims arising from a home entry and detention they did not personally carry out would not comport with fair play and substantial justice.

The Court should dismiss League City and Shaw for lack of personal jurisdiction. If the Court concludes that jurisdictional facts are genuinely disputed, any jurisdictional discovery should be limited to Shaw's own contacts with the State of Florida.

### B. The Amended Complaint Fails to State a Claim Against League City and Detective Shaw.

#### *1. Count V Does not Sufficiently Plead Monell Liability Against League City.*

A municipality is not vicariously liable under section 1983 for the acts of its employees; the plaintiff must plead an official policy or widespread custom, attributable to a final policymaker, that was the "moving force" behind a constitutional violation. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Because this theory does not involve an unconstitutional policy on its face, it requires "rigorous standards of culpability and causation" to ensure that League City is not

held liable solely because it employs Shaw. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997). A failure-to-train claim requires deliberate indifference which ordinarily requires a pattern of similar constitutional violations sufficient to place the municipality on notice. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Count V does not meet that standard. It does not identify a written League City policy. It does not name a final policymaker; it refers only to "League City's policymakers," undifferentiated and unidentified. (Am. Compl. ¶ 134.) Its only asserted notice is the allegation that, "upon information and belief," League City "had received notice, through prior complaints, civil rights litigation, administrative proceedings, judicial proceedings, and other reports," of similar violations "before March 7, 2025." (Id. ¶ 132.) No complaint, lawsuit, proceeding, or report is identified; no date, no party, and no disposition is given. That is the same "threadbare recital" the Eleventh Circuit has held cannot carry a *Monell* claim past the pleading stage. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1328-29 (11th Cir. 2015); *Iqbal*, 556 U.S. at 678.

Count V fails for the independent and more fundamental reason that it cannot satisfy *Monell's* causation requirement. The only constitutional violations pled anywhere in the Amended Complaint, the warrantless entry, the search and seizure of Duvall's phone, and his prolonged detention, are alleged in Counts I through III

against MCSO's deputies alone. (Am. Compl. ¶¶ 43, 55, 73.) No League City employee is alleged to have entered Plaintiffs' home, searched anything, seized anyone, or made any custodial decision concerning Duvall, nor does the Amended Complaint allege that Shaw or League City directed such activity. *Monell* requires that the defendant municipality's own policy be the moving force behind a violation inflicted by that municipality's own officials, not a violation inflicted entirely by a different, independent governmental entity's personnel. *Monell*, 436 U.S. at 694; *Bryan Cnty.,* 520 U.S. at 404-05. Whatever training League City did or did not provide to Shaw, it could not have been the moving force behind MCSO's own, independent decision to enter the residence without a warrant or to hold Duvall three days beyond the point at which both the demanding jurisdiction and a Florida court had authorized his release, a decision the Amended Complaint attributes to MCSO's own failure to follow MCSO's own written verification procedures. (Am. Compl. ¶¶ 37-38, 78, 96-101.) Count V should be dismissed.

#### ***2. Count VII Does not Sufficiently Plead a Civil Rights Conspiracy Against Detective Shaw.***

A section 1983 conspiracy claim requires a plaintiff to show that the defendants "reached an understanding" to deny the plaintiff's constitutional rights, resulting in the actual denial of an underlying right; the agreement is the linchpin of the claim. *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1260 (11th Cir. 2010). Conclusory allegations of an agreement, without more, do not suffice, and parallel

or coordinated conduct among independent actors does not itself plead an agreement. *Twombly*, 550 U.S. at 556-57.

Count VII alleges that Shaw and the MCSO deputies "reached an understanding and acted in concert to advance an interstate investigation," and that their "communications, coordinated investigative activities, and interagency actions" support "the reasonable inference" of an agreement. (Am. Compl. ¶¶ 155, 157, 162.) That remains a legal conclusion dressed as fact. But even if those allegations were pled as substantive facts, it still would not establish that the Defendants reached an agreement to deny Plaintiffs' constitutional rights. Nowhere does the Amended Complaint allege that Shaw agreed MCSO would enter without a search warrant, that he knew of or agreed to Duvall's detention beyond the date Texas withdrew its detainer, or that he had any role in MCSO's decision to hold Duvall three additional days after a Florida court authorized his release, the specific conduct from which Plaintiffs' injuries are alleged to flow. (*Id.* ¶¶ 82-90.) Count VII should be dismissed as to Shaw.

#### ***3. Detective Shaw is Entitled to Qualified Immunity on the Conspiracy Claim.***

Qualified immunity shields a government official from damages unless the plaintiff pleads facts showing the violation of a constitutional right that was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The right must be sufficiently clear that every reasonable official would understand that what

he is doing violates that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks omitted). Existing precedent must place the statutory or constitutional question "beyond debate." *Id.*

No such precedent exists here. Plaintiffs identify no case, because none exists, holding that an out-of-state detective becomes liable in conspiracy for a sister agency's independent warrantless entry and prolonged detention merely because he identified a suspect's location, asked for assistance, discussed an investigative approach, and supplied a warrant later used by that agency. A reasonable officer in Shaw's position, confronted with those facts alone, would not have understood that requesting interagency assistance on a fugitive investigation, without more, exposed him to individual liability for another agency's subsequent, independent custodial decisions. Qualified immunity independently requires dismissal of Count VII as to Shaw.

#### ***4. Any Demand for Punitive Damages Against League City Should be Dismissed.***

A municipality is immune from punitive damages under section 1983 as a matter of law. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). The Amended Complaint's prayer for relief seeks "punitive damages" against "Defendants," a category that on its face includes League City. (Am. Compl. ¶ 172.) To the extent that prayer is construed to seek punitive damages against League City, it should be dismissed or stricken.

## V. CONCLUSION

For the foregoing reasons, Defendants City of League City and Clayton Shaw respectfully request that the Court dismiss all claims against them for lack of personal jurisdiction under Rule 12(b)(2). In the alternative, League City and Shaw request that the Court dismiss Count V and Count VII as to them under Rule 12(b)(6), dismiss Shaw from Count VII on qualified immunity grounds, strike or dismiss the demand for punitive damages against League City, and grant such other and further relief as the Court deems just and proper.

**WHEREFORE**, the Texas Defendants request this Court grant the relief requested herein and for such other relief as the Court deems just and proper.

### Local Rule 3.01(g) Certification

Pursuant to M.D. Loc. R. 3.01(g), on October 16, 2026, undersigned counsel spoke with counsel for the Plaintiffs, Mr. Robert Mactavish, Esq., by telephone to discuss the instant motion. After a good faith conversation discussing the specific issues addressed in this Motion, Plaintiff's counsel indicated an objection to the relief requested herein.

### Certification Under Penalty of Perjury That Artificial Intelligence was Used in the Preparation of This Filing

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: Westlaw Advantage was used to assist with legal research and

Claude was used to review the draft brief for typographical and grammatical errors. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

**I HEREBY CERTIFY** that on October 19, 2026, the foregoing was electronically filed with the clerk of court by using the CM/ECF system which will send a notice of electronic filing to Robert S. Mactavish, Esq., 3003 N. Central Ave.,

Ste. 685, Phoenix, AZ 85012; Zackery Scharlepp, Esq. and Alexis L. Eisman, Esq., 2316 Killearn Center Blvd., Suite 202, Tallahassee, FL 32309.

*/s/ Joshua B. Walker*

JOSHUA B. WALKER, ESQ.
Florida Bar No. 0047614
Walker, Revels, Greninger, PLLC
189 S. Orange Avenue, Suite 1600
Orlando, FL 32801
Tel: 407-789-1830 Fax: 321-251-2990
Attorney for City of League City and
Clayton Shaw