UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BRITNI WALSH and FRANKLIN EUGENE DUVALL, JR.,

Plaintiffs,

v. CASE NO. 5:26-cv-00545-JSM-PRL

LEAGUE CITY POLICE DEPARTMENT, CITY OF LEAGUE CITY, SHERIFF BILLY WOODS, in his official capacity, KAILEIGH WALTON, HENRIK OSTHED, LEEF JEANFRANCOIS, and CLAYTON SHAW in their official and individual capacities,

Defendants.
______________________________/

**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Pursuant to *Federal Rule of Civil Procedure* 12(b)(6), Defendants SHERIFF BILLY WOODS, KAILEIGH WALTON, HENRICK OSTHED, AND LEEF JEAN-FRANCOIS move to dismiss Plaintiffs' Complaint [ECF-37] with prejudice and state:

**INTRODUCTION**

1. This is a frivolous case with no factual or legal merit. Plaintiffs bring suit challenging an arrest made pursuant to a facially valid warrant at Plaintiff Duvall's residence. In a post-Miranda interview, Plaintiff admitted to

sending videos of himself masturbating to an eleven-year-old minor in Texas, justifying his actions by claiming he believed she was fourteen. Despite Plaintiff's admission to the crimes for which he was arrested, Plaintiff was initially released from the Marion County Jail on March 28, 2025, when it was initially believed that Texas would not extradite Plaintiff to Texas for his criminal offenses.[1]

2. Empowered by what Plaintiffs apparently believed was their evasion of justice, Plaintiffs brought the instant suit challenging the legitimate investigative techniques of law enforcement. Specifically, Plaintiffs complain that law enforcement was dishonest with Duvall and did not inform him he was being investigated for disseminating sexual content to a child. Plaintiffs also assert that deputies' arrest of Plaintiff on a facially valid warrant in his home violated their constitutional rights.

## FACTUAL BACKGROUND

3. On December 19, 2024, Clayton Shaw of the League City Police Department contacted the Marion County Sheriff's Office regarding an active

---

[1] Plaintiff was initially released from the Marion County Jail on March 28, 2025, when after Texas was unable to obtain a Governor's warrant and would not extradite. Plaintiff was again arrested on September 5, 2026, and is currently incarcerated in the Marion County Jail awaiting an extradition hearing on November 3, 2026. It is Defendant's understanding that Plaintiff will be extradited to Texas at that time.

investigation of internet child sex crimes. The Texas agency had determined the perpetrator of the crime resided in Marion County and requested assistance investigating the crime.

4. Detective Walton took the lead in the investigation. Based on the perpetrator's Discord username "Steveman1555", law enforcement was able to determine an address from which the sexually explicit material had been transmitted to an 11-year-old minor.

5. Utilizing a trained law enforcement technique, Detective Walton initiated a consensual encounter with Plaintiff at his residence. Detective Walton informed Plaintiff that they had received an anonymous report that someone from that address had made threats of self-harm on Discord, an internet message board, under the username "Steveman1555" and that law enforcement was there to determine the veracity of the threat.

6. The technique worked. During the consensual encounter, Plaintiff Duvall retrieved his cell phone, showed deputies his Discord account username and email address, and permitted deputies to photograph the same. [See Exhibit A].

7. The information gathered during Detective Walton's consensual encounter with Plaintiff was provided to Detective Shaw. Detective Shaw

utilized the gathered identifying information and secured an arrest warrant for Plaintiff. Plaintiff was to be arrested in Florida and extradited to Texas.

8. On March 7, 2025, with a confirmed warrant for Plaintiff's arrest issued from Texas, Detective Walton and Osthed returned to Plaintiff's known residence to effectuate the arrest warrant. Detectives Walton and Osthed successfully arrested Plaintiff at his residence, placed him in handcuffs, and made contact with Patrol Deputy Jean-Francois to respond to the address for the sole purpose of transporting Plaintiff Duvall to the Sheriff's Office.

9. After Plaintiff Duvall was arrested, Detectives secured his cell phone in an evidence bag and conducted a post-Miranda custodial interview.[2] Plaintiff was then booked into the Marion County Jail to await extradition to Texas. For unknown reasons, Texas was unable to obtain the necessary Governor's warrant to complete Plaintiff's extradition, and Plaintiff was released from jail on March 28, 2025.

10. Based on the above, Plaintiff brings the following claims:

| Count | Nature of Claim | Defendants |
|---|---|---|
| Count I | Fourth Amendment unlawful Entry | Walton, Osthed, Woods |

[2] Although omitted from the First Amended Complaint, it must be noted that Plaintiff admitted to sending videos of himself masturbating to a minor in Texas who he believed was 14 years old. Plaintiff was twenty years old at the time of his arrest.

| | | |
|---|---|---|
| Count II | Fourth Amendment Unlawful Search and Seizure | Walton, Osthed, Jean-Francois, Woods |
| Count III | Fourteenth Amendment unlawful prolonged jailing | Walton, Osthed, and Jean-Francois |
| Count IV | Monell Liability | Sheriff Woods |
| Count V | Monell Liability | City of League City Texas. |
| Count VI | Monell Liability Failure to Supervise/Train | Sheriff Woods |
| Count VII | Conspiracy to violate Civil Rights | Shaw, Walton, Osthed, and Jean-Francois |

11. All claims against Defendants Woods, Osthed, Walton, and Jean-Francois must be dismissed for the following reasons:

a) Count I must be dismissed as a facially valid arrest warrant existed for Plaintiff permitting deputies to enter Plaintiff's residence.

b) Count II fails as Plaintiff admits that he consensually agreed to permit deputies to review his Discord information on his cellular phone.

c) Plaintiff's Fourteenth Amendment claim against the individual deputies must be dismissed as Plaintiff has pled no facts showing that any of the individual deputies participated or played any role in Plaintiff's detention after he was arrested.

d) Plaintiff's *Monell* claim against the Sheriff must fail as Plaintiff has not alleged a cognizable constitutional violation, and even assuming he has, has not alleged that a custom policy or practice of the Sheriff's office was the driving force behind the violation.

e) Plaintiff's failure to supervise claim should be dismissed as Plaintiffs have not alleged any custom or practice of prior similar constitutional violations as generally required to establish a failure to train or supervise *Monell* claim.

f) No constitutional violation took place; therefore, no conspiracy took place.

g) Plaintiffs' Amended Complaint is a shotgun pleading.

12. For the reasons explained in this motion, Plaintiffs' Amended Complaint should be dismissed with prejudice.

**WHEREFORE**, Defendants SHERIFF BILLY WOODS, KAILEIGH WALTON, HENRICK OSTHED AND LEEF JEAN-FRANCOIS request that the Court dismiss this action with prejudice for failure to state a claim.

## MEMORANDUM OF LAW

Pursuant to Local Rule 3.01, Defendants offer the following Memorandum in support of this Motion.

### I. Standard of Review.

In considering a motion to dismiss, the Court must generally accept the factual allegations in the Complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Florida High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019).

But a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 US 662, 663 (2009) (quoting *Bell Atlantic v. Twombly*, 550 US 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004). See also *Iqbal*, 556 U.S. at 678 (courts must disregard "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

## II. Counts I should be dismissed as the detectives had a lawful basis to enter the home.

Plaintiffs' First Amended Complaint described the March 7 entry as "warrantless"[3]. (Doc. 37 ¶¶27, 46.) However, Plaintiff's First Amended Complaint further states that Walton and Osthed went to the residence to execute a felony arrest warrant, and the complaint does not challenge the validity of the Texas arrest warrant. (Id. ¶¶ 25, 45, 47).

The Supreme Court held that, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980).

No separate search warrant is required to enter the suspect's own home. *Id.; United States v. Bervaldi*, 226 F.3d 1256, 1262–63 (11th Cir. 2000). The Eleventh Circuit applies a two-part test: officers must reasonably believe (1) that the location is the suspect's dwelling and (2) that the suspect is inside. *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995). The test is applied with "common sense," and officers "may presume that a person is at home at certain times of the day." *Id.* Silence in response to a knock does not

[3] Plaintiffs' complaint is difficult to comprehend. Plaintiffs do not challenged the validity of the Texas arrest warrant. Yet, at paragraph 47, Plaintiffs state" the warrant did not, under the circumstances alleged here, provide Walton and Osthed with lawful authority to make a warrantless, nonconsensual entry into Plaintiffs' residence absent an applicable exception to the Fourth Amendment's warrant requirement."{

defeat that belief, because "it was reasonable to expect a fugitive to hide or flee if possible." *Id.* at 1536 (quoting *United States v. Beck*, 729 F.2d 1329, 1332 (11th Cir. 1984)).

Plaintiffs' First Amended Complaint concludes that a felony arrest warrant was involved. (*Id.* ¶¶ 25, 35, 47.) It further pleads that Defendants went to Duvall's home to locate him, after meeting him there in January. (*Id.* ¶¶ 20-21, 25, 45). Plaintiffs also alleged that Duvall was actually inside and that he refused to respond to their knocks. (*Id.* ¶¶ 28-29, 46, 50). Plaintiff was ultimately located inside his residence and arrested.

## III. Plaintiffs do not allege sufficient facts to state an unlawful seizure claim regarding Plaintiff Duvall's phone.

Although unclear from the complaint to the extent Plaintiff Walsh asserts an unlawful search claim related to the alleged search of Duvall's phone, her claim fails as a matter of law for lack of standing. Under United States constitutional law, a third-party lacks standing to challenge an unlawful search of someone else's property because Fourth Amendment rights are personal and cannot be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128 (1978).

Plaintiff Duvall's unlawful search claim fares no better. Plaintiff acknowledges he consented to the January 8, 2025, photographing of his

Discord information on his phone. [*Id.* ¶ 21]. Specifically, Duvall admits he "cooperated with the deputies, retrieved his cellular telephone, and permitted deputies to view and photograph information associated with his Discord account," during an encounter that was not custodial. *(Id.* ¶21). A search conducted with voluntary consent is reasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 222 (1973).

Plaintiffs allege that the consent was not valid because Walton did not disclose the Texas investigation and only disclosed a fake swatting report. (*Id.* at ¶¶ 58-59). "A knock and talk is a consensual encounter between police who seek to gather information and a civilian, which takes place at the civilian's home." *Young v. Borders*, 850 F.3d 1274, 1295 (11th Cir. 2017). Absent express orders from the occupant(s) of the residence, the police "are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may." *United States v. Lara-Mondragon*, 516 F. App'x 771, 772-73 (11th Cir. 2013); *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) (explaining that "[a]bsent express orders from the person in possession, an officer may walk up the steps and knock on the front door of any man's 'castle,' with the intent of asking question of the occupant thereof"); *see also Florida v. Jardines*, 569 U.S. 1, 8, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013) (explaining that "a police officer not armed with a

warrant may approach a home and knock, precisely because that is no more than any private citizen might do"). Deputies were therefore permitted to approach Duvall's residence to speak with him.

Deputy Walton's deception regarding the alleged report that they had received information regarding threats of self-harm made by Discord user "Steveman155" as a pretext to get Plaintiff Duvall to show deputies his Discord username and password does not transform the consensual nature of the interaction into an unconstitutional search. The Eleventh Circuit has long held that deception by law enforcement does not invalidate voluntary consent so long as the police still have legal authority to be there. *United States v. Spivey*, 861 F.3d 1207, 1210–13 (11th Cir. 2017). *See also*, *United States v. Peters*, 153 F.3d 445, 463 (7th Cir. 1998) (Easterbrook, J., concurring) ("If a misunderstanding of one's status as a target—misunderstanding abetted by calculated silence and half-truths from agents and prosecutors—does not invariably make a statement involuntary, why should it make a disclosure of physical evidence involuntary?"). Defendant Duvall does not allege that Walton entered his home on January 8. He does not allege that he was ever detained by law enforcement. Duvall was free to refuse Deputies' requests to review his Discord information.

In *Spivey*, the Eleventh Circuit affirmed the lawfulness of an information gathered from inside a home when law enforcement responded to a residence to allegedly follow up on a prior burglary call, but were truly there to investigate separate criminal activity. In *Spivey,* the defendants argued that the officers' ploy of assistance rendered their consent to enter the home nonconsensual. The Eleventh Circuit disagreed:

> Austin and Spivey argue that the officers' deception was egregious because the purpose of the ruse was to mislead them into believing that the officers were there to "assist them," not to "bust them." They argue that a "ruse" about whether Austin was the target of the investigation is worse than misrepresentations about whether an investigation is civil or criminal. We disagree.

*Spivey*, 861 F.3d at 1214.

With regard to the March 7 seizure of Duvall's phone, there was also no unlawful search or seizure. Plaintiffs' Amended Complaint alleges that Walton and Osthed seized Duvall's phone at the time of his arrest on a felony warrant in an investigation regarding his Discord communications, placed it in a Faraday bag, and secured it to be "submitted into evidence." (*Id.* ¶¶ 18, 30, 63-64). The Supreme Court held in *Riley v. California*, that officers generally need a warrant to search cell phone data, but they may seize and secure an arrestee's phone "to prevent destruction of evidence while seeking a warrant."

573 U.S. 373, 388 (2014). Therefore, no unlawful search or seizure in regard to Walsh or Duvall took place.[4]

## IV. <u>Count III should be dismissed as there are no facts alleged that any Deputy no deputy had any role in Duvall's Custody after his March 7, 2025 arrest.[5]</u>

Plaintiffs alleged in their Amended Complaint that Duvall was arrested on a warrant and brought before a Florida judge the next day. (*Id.* ¶¶ 35, 47, 81).

Plaintiff acknowledges that, at the time of Plaintiff's March 7 arrest, the information available to Deputies Walton and Osthed was that Texas would extradite Plaintiff. For unknown reasons, on March 25, 2025, the Galveston County Sheriff's Office notified MCSO that a Governor's warrant could not be obtained and that therefore Plaintiff could not be extradited to Texas. [ECF 37,

---

[4] Further, as it pertains to Deputies Osthed and Jean-Francois, Plaintiffs unlawful search claim should also be dismissed as Plaintiff has not alleged that either deputy participated in the January 8, 2025, consensual encounter, or searched Duvall's phone.

[5] Count III should be dismissed as it relates to Walsh as nowhere in Plaintiffs' First Amended Complaint does Plaintiffs state that Walsh was arrested or detained or had a pro-longed detention.

¶82]. MCSO immediately notified the court of the change in circumstance and Plaintiff was ordered released.[6]

Even assuming Plaintiff was held an additional three days after it was determined that Texas would not extradite him, Count III must be dismissed against the individual defendants, as Plaintiff has not alleged any facts that Deputies Walton, Osthed, or Jean-Francois played any role in the decision or alleged delay related to Plaintiff's release. As such, there is no basis to hold any of the individual deputies liable for Duvall's alleged prolonged detention, as Plaintiff has pled no facts alleging any individual involvement in Plaintiff's detention beyond his March 7, 2025, arrest.

## V. **Counts IV and VI fail to identify a custom, policy, or practice that was the cause of the Plaintiffs' alleged constitutional violation.**

Although the Supreme Court has held that local government entities are "persons" within the scope of § 1983 and subject to its provisions, an entity cannot be vicariously liable for the constitutional wrongs of its employees. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir 2004) (citing *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1978)). A municipality is

---

[6] Although Plaintiff alleges he was held at the Marion County Jail until March 28, 2025, and the Defendant accepts the same as true as required at the motion to dismiss stage, all MCSO records reflect that Plaintiff was released from MCSO on March 25, 2025.

not liable under § 1983 "solely based on the existence of an employer-employee relationship with a tortfeasor." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 692 (1978). "It is only when the execution of the government's policy or custom inflicts the injury that a municipality may be held liable." *McDowell*, 392 F.3d at 1289 (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A municipality does not incur § 1983 liability for injuries caused solely by its employees. *Id.* Nor does the fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee infer municipal culpability. *Id*.

Plaintiffs attempt to cast conclusory allegations containing no factual support as sufficient to establish liability. First, Plaintiffs attempt to allege customs or practices of long-standing constitutional violations to state a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Specifically, Plaintiffs allege:

143. MCSO's own written policies and legal directives demonstrate that MCSO recognized the constitutional and legal risks associated with these areas of law-enforcement activity. MCSO Policy 4042.00 required deputies handling arrest warrants and fugitive matters to verify the subject's identity, the underlying charge or warrant, applicable bond information, and the originating agency's agreement to extradite.

144. MCSO Policy 4252.00 likewise required constitutional compliance in criminal investigations, including adherence to constitutional limitations governing interviews, custodial questioning, searches, arrests, and the assertion of constitutional rights.

145. The policy further required confirmation through appropriate documentation and provided that, if the originating agency would not extradite, the arrest should not be made. Section 4042.80 specifically required additional verification and documentation for fugitive arrests, including confirmation of the charge and agreement to extradite. MCSO Legal Bulletin 2022-18 separately required a warrant to search a cellular telephone even where the telephone had been lawfully seized.

To sustain a *Monell* claim under this theory, Plaintiffs must allege facts sufficient to raise an inference that there was "a widespread practice that, 'although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law[.]' ' " *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (*quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (*quoting Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970))).

Because the custom must be widespread and repeated, "random acts or isolated incidents are insufficient to establish a custom[.]." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). *See also Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) ("To establish the existence of a custom, the plaintiff must show a longstanding and widespread practice.") (internal quotation marks omitted) (*quoting Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)). Thus, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig*, 643 F.3d at 1311. Rather, "considerably more proof than [a] single incident [is] necessary." *City of Okla. City v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (alterations added).

Here, glaringly absent from the Complaint are any facts or allegations supporting Plaintiffs' conclusory statements of similar constitutional concerns. Instead, Plaintiffs' Complaint simply recites the allegations of this case and labels it as a "custom". Plaintiffs do not plead any other facts that would support an inference that these "similar constitutional concerns" occurred more than once, as alleged in Plaintiffs' Complaint. Therefore, these conclusory and unsupported allegations fail to state a claim under Monell.

The District Court for the Southern District of Florida has recently addressed this very issue and determined that threadbare, conclusory, factually unsupported allegations in a complaint do not satisfy Plaintiffs' pleading standard.

> Here, Count II alleges only that "[t]he City has a history of retaliating against those who speak out about gross financial mismanagement/ waste of public funds." This conclusory, factually unsupported allegation is insufficient to plausibly allege a "custom or practice" of retaliation. *See Dipietro v. City of Hialeah*, 424 F. Supp. 3d 1286, 1297 (S.D. Fla. 2020) (finding that the Plaintiffs' allegations that the City retaliated against the plaintiff and one other police officer for speaking out against the City's unlawful traffic quota were "clearly deficient" and "fall woefully short of demonstrating the City's practice of retaliating against officers 'constitute[s] the sort of occurrence that is obvious, flagrant, rampant and of continued duration that would establish a causal connection between actions of the supervising official and the alleged constitutional violation' ") (*quoting Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015)); *Sharp v. City of Montgomery*, CASE NO. 2:19-CV-857-WKW, 2021 WL 5989104, at *4 n.4 (M.D. Ala. Dec. 17, 2021) (finding that vague allegations regarding the prevalence of racial discrimination and retaliation in the City of Montgomery, Alabama were "insufficient to convert an averment of a widespread discriminatory practice from speculative to plausible"), *Sanchez v. Miami-Dade Cnty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007) (finding that an unsupported "vague allegation" that "the abuse to which the Plaintiff was subjected to was not an isolated incident, and was consistent with policy,

> **custom**, and **practice** of Miami-Dade County" was insufficient to plead a § 1983 municipality liability claim).

Here, the factual assertions in the complaint are sparser than those analyzed and rejected by the courts above. Plaintiffs only recite the facts of their own case as a single instance of like conduct. Plaintiffs fail to set forth facts of a pattern of instances establishing a custom of practice.

Second, Plaintiffs also attempt to assert liability against the Sheriff based on an alleged failure-to-train theory as set forth in *City of Canton v. Harris*, 489 U.S. 378 (1989).

In *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), the United States Supreme Court held that training programs, or lack thereof, may give rise to Section 1983 liability. 489 U.S. at 388; *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) (recognizing that failure-to-supervise claims fall within the scope of Monell and Canton liability). Failure-to- train claims are subject to "rigorous standards of culpability and causation," *Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 405 (1997)*, and are "appropriate only when inadequate training 'amounts to deliberate indifference to the rights of persons with whom the [employee] come into contact.'" *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (quoting *Canton*, 489 U.S. at 388). "A pattern of similar constitutional violations by untrained employees is 'ordinarily

necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Brown*, 520 U.S. at 409).

Here, Plaintiffs cannot establish deliberate indifference as Plaintiffs also allege that the Sheriff had policies in place for this situation. MCSO's written guidance on each subject (*Id.* ¶¶ 96–100, 143–45) also defeats any inference that the Sheriff deliberately chose to leave deputies untrained.

Third, there are no underlying constitutional violations. If no constitutional injury was inflicted by the individual officers, the entity cannot be liable. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam). Counts IV and VI are expressly derivative of Counts I through III. (*Id.* ¶¶ 95, 119, 152.) Because those counts fail on the merits for the reasons above, Counts IV and VI fail with them.

Fourth, Plaintiffs' Amended Complaint does not identify any MCSO policy that is unconstitutional. Instead, it relies on the policy already in place, claiming that it should have been followed: Policy 4042.00 requires verification of extradition before a fugitive arrest; Policy 4252.00 requires "constitutional compliance in criminal investigations"; and Legal Bulletin 2022-18 requires a warrant to search a seized phone. (*Id.* ¶¶ 96–97, 100, 143–45). In addition, Plaintiffs concede that these policies "demonstrate that MCSO recognized the constitutional and legal safeguards applicable to the conduct at issue." (*Id.* ¶

96). Yet, these policies were not followed. (*Id.* ¶¶ 98, 100, 104, 147). A policy that directs officers to comply with the Constitution cannot be the "moving force" behind an officer's alleged failure to comply with it. *See Brown*, 520 U.S. at 404–05. Consequently, Counts IV and VI should be dismissed.

## VI. <u>Count VII should be dismissed as no underlying constitutional violation took place.</u>

A Section 1983 conspiracy requires the plaintiff to show that the defendants "reached an understanding" to deny the plaintiff's rights and that the conspiracy resulted in an "actual denial of" a constitutional right. *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). "It is not enough to simply aver in the complaint that a conspiracy existed"; vague and conclusory allegations are insufficient. *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984). Count VII fails for four independent reasons.

There is no underlying constitutional violation. For the reasons set out above, Counts I through III do not state a claim, and without an "actual denial" of a constitutional right, there is no actionable conspiracy. *Grider*, 618 F.3d at 1260.

## VII. <u>Conclusion</u>.

For the reasons stated herein, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)</u>

The undersigned certifies that counsel for Defendant discussed this matter with Plaintiff's counsel on October 19, 2026 via phone conference. Defendant provided additional information to Plaintiff for review in evaluating this matter and upon review Plaintiff's counsel will respond with their position on the motion within the time permitted under the Federal Rules of Civil Procedure.

Respectfully submitted this 19th day of October, 2026.

***/s/ Alexis Eisman***

Zackery Scharlepp, (FBN: 0085374)
Alexis L. Eisman, (FBN: 1049442)
zascharlepp@coppinsmonroe.com
aeisman@coppinsmonroe.com
bmiller@coppinsmonroe.com
kwillis@coppinsmonroe.com
COPPINS MONROE, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420 | Fax: 850-422-2730

ATTORNEYS FOR DEFENDANT SHERIFF BILLY WOODS, KAILEIGH WALTON, HENRICK OSTHED, AND LEEF JEAN-FRANCOIS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b)(3) and N.D. Florida Local Rule 5.1, this document is being filed electronically, and service shall be

through the Court's transmission facilities on all persons appearing before this Court.

***/s/ Alexis Eisman***
Attorney

**CERTIFICATION UNDER PENALTY OF PERJURY THAT ARTIFICIAL INTELLIGENCE WAS USED IN THE PREPARATION OF THIS FILING**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: identifying citations to pleadings and case law. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not

reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

***/s/ Alexis Eisman***
Attorney