UNITED STATES DISTRICT COURT
for the
Middle District of Florida – Ocala Division

| | |
|---|---|
| BRITNI WALSH and FRANKLIN EUGENE DUVALL JR., *Plaintiffs,* <br><br> -v- <br><br> CITY OF LEAGUE CITY, SHERIFF BILLY WOODS in his official capacity as Sheriff, KAILEIGH WALTON, HENRIK OSTHED, LEEF JEAN-FRANCOIS, and CLAYTON SHAW in their individual capacities, *Defendants.* | **Case No.5:26-cv-00545-AGM-PRL** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE FLORIDA DEFENDANTS' MOTION TO DISMISS**

**COMES NOW** Plaintiffs BRITNI WALSH and FRANKLIN EUGENE DUVALL JR., by and through undersigned counsel, and submit this Response in Opposition to Defendants SHERIFF BILLY WOODS, KAILEIGH WALTON, HENRIK OSTHED, and LEEF JEAN-FRANCOIS's Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(6) (Doc. 41). Plaintiffs respectfully state that the motion does not provide a basis for dismissal of the claims asserted and should be denied for the reasons set forth below.

## INTRODUCTION

This case arises from a coordinated interstate investigation initiated by

Texas Detective Clayton Shaw and executed in Florida by MCSO personnel. The FAC alleges that MCSO deputies coordinated an interstate investigation involving Plaintiffs, used a fabricated suicide-threat emergency which rendered Duvall's consent to search at that point involuntary, obtained access to Mr. Duvall's cellular telephone, photographed digital information from the device, transferred the device to Texas authorities, entered Plaintiffs' home exigent circumstances, seized and handcuffed Mr. Duvall, interrogated him, and caused him to remain incarcerated for eighteen days until Texas withdrew its detainer and a Florida court authorized his release.[1] FAC ¶¶ 17–45, 57–79, 32–35.

The Florida Defendants' Motion attempts to recast these allegations as a routine arrest pursuant to a "facially valid warrant," preceded by a "consensual encounter," and followed by a detention in which no Florida deputy played any role. The FAC alleges the opposite. It alleges that the January 8 encounter was not consensual because deputies used a fabricated

[1] Plaintiffs concede that there are two factual inaccuracies in the FAC (Doc. 37) which must be pointed out here and will necessitate further amendment: 1) Mr. Duvall's release date from the Marion County Jail was 03/25/25 and not 03/28/25 as stated in the FAC ¶¶ 31 and 34; 2) there was no forced entry on 03/07/25 to the rear of the residence as described in ¶¶ 27 and 49. On 10/19/206, the Florida Defendants' counsel provided a link labeled "Duvall v MCSO-Documents to PL's Counsel 10.19.26" with access to a server containing Mr. Duvall's jail records showing a release date of 3/25/25, body cam footage showing the encounter between law enforcement and Duvall on 3/7/25, and several other documents and videos. Ideally of course, any amendments to a Complaint would be completed prior to litigating a motion to dismiss and response in opposition. However, as Plaintiffs' Response in Opposition to MTD is due on 11/02/26, this response is being filed even though a motion for leave to amend the complaint will be filed soon. On 10/30/26, Plaintiffs' counsel informed the Florida Defendants' counsel of his intent to seek leave to further amend the complaint. Florida Defendants' counsel indicated that he would first need an opportunity to review a draft of this proposed Second Amended Complaint before expressing whether he opposes or consents with a motion for leave to amend. Undersigned counsel apologizes to this Court for the sequence of these filings and for the factual inaccuracies in the FAC.

suicide-threat emergency to induce compliance; that the Texas arrest warrant was obtained using tainted evidence gathered through that coercive ruse; that the March 7 entry was unlawful under *Payton v. New York*, 445 U.S. 573 (1980); that the March 7 seizure of Mr. Duvall's phone and any subsequent search of its digital contents present distinct Fourth Amendment questions, including whether officers obtained a warrant before searching the phone's contents, as contemplated by *Riley v. California*, 573 U.S. 373, 386–91 (2014), and MCSO Legal Bulletin 2022-18; and that MCSO personnel caused Mr. Duvall to remain incarcerated for eighteen days before Texas withdrew its detainer and the Florida court authorized release. FAC ¶¶ 20–22, 30–31, 32–35, 61–65.

At the Rule 12(b)(6) stage, these allegations must be accepted as true. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019). When accepted as true, they state multiple constitutional violations.

## LEGAL STANDARD

A complaint survives dismissal if it contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Cambridge Christian*, 942

F.3d at 1229. Rule 8 does not impose a heightened pleading standard for § 1983 claims. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277–80 (11th Cir. 2016).

## ARGUMENT

### I. The Texas Warrant Does Not Resolve the Constitutional Challenge to the January 8 Encounter and the Evidence Obtained Through It

The Florida Defendants rely on the existence of a Texas arrest warrant to characterize the March 7, 2025 arrest as lawful. That argument does not resolve the constitutional challenge pleaded in the FAC. Plaintiffs allege that, on January 8, 2025, MCSO personnel used a purported suicide emergency as a pretext to obtain Duvall's cooperation in accessing and photographing information on his phone, while deliberately concealing the Texas investigation. FAC ¶¶ 20–24, 57–60. The alleged conduct was not simply an officer's failure to disclose an investigative purpose. Plaintiffs contend that the fabricated emergency vitiated the voluntariness of Duvall's consent and enabled officers to obtain information they otherwise would not have acquired through that encounter. Communicating this same self-harm emergency ruse to Plaintiff Duvall's brother Donovan Duvall first further heightened the high-pressure emergency nature of the ruse by involving another family member. Because the information that the law enforcement officers obtained from Duvall on 01/08/25 was illegally obtained as a product of Duvall's vitiated

consent, it cannot be relied upon to support the arrest warrant that was used to arrest Duvall on 03/07/25. Once the constitutionally tainted information on the arrest warrant is excised, it cannot stand up on its own and subsequent events and evidence obtained as a product of Duvall's illegal arrest are fruit of the poisonous tree and must be suppressed. *Wong Sun v. United States*, 371 U.S. 471 (1963).

The Fourth Amendment's consent inquiry turns on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 248–49 (1973). Plaintiffs acknowledge that *United States v. Spivey*, 861 F.3d 1207, 1210–15 (11th Cir. 2017), rejects a categorical rule that police deception necessarily invalidates consent. But *Spivey* does not make the circumstances or purpose of the deception irrelevant, nor does it establish that an encounter is constitutionally valid whenever a person is not formally detained. The FAC alleges more than concealment of an investigative purpose: MCSO personnel allegedly discussed how to obtain information without alerting Duvall to Shaw's Texas investigation and selected a purported emergency as the pretext for obtaining his cooperation. FAC ¶¶ 20–24, 57–60. The resulting access to and photographing of information on Duvall's phone must be evaluated in light of those alleged circumstances. Characterizing the encounter as consensual does not resolve whether the ruse undermined the voluntariness of his consent.

The January 8 information allegedly contributed to the Texas

investigation that led to the warrant and subsequent arrest. Whether information obtained through the challenged encounter was material to probable cause, and whether the warrant or later evidence would have been obtained independently of that information, depend on the warrant affidavit and the remaining evidence. Plaintiffs do not contend that the Texas warrant was invalid merely because it was issued by a Justice of the Peace or because Texas later declined to extradite Duvall. Rather, Plaintiffs contend that the warrant's existence does not foreclose examination of whether officers unconstitutionally obtained information during the January 8 encounter and whether that information was subsequently used in the investigation and arrest. Here, because Duvall's consent was rendered involuntary due to the emergency nature of the ruse cover story, the information gathered as a product of his alleged consent cannot be relied upon to support the arrest warrant.

The same distinction applies to the March 7 entry. Under *Payton v. New York*, 445 U.S. 573, 603 (1980), an arrest warrant may authorize entry into the suspect's own dwelling when officers have reason to believe the suspect is inside. *United States v. Bervaldi*, 226 F.3d 1256, 1262–63 (11th Cir. 2000); *United States v. Magluta*, 44 F.3d 1530, 1535–36 (11th Cir. 1995). The FAC alleges that Walton and Osthed entered Plaintiffs' home without consent or exigent circumstances. FAC ¶¶ 27–31, 45–54. The existence of an arrest

warrant does not dispense with the constitutional requirements governing entry into a home. The Court should therefore assess the warrant-related challenge and the entry claim under their respective Fourth Amendment standards rather than treating the warrant's existence as dispositive of both.

## **II. Count II States a Valid Fourth Amendment Claim for Unlawful Search and Seizure**

Defendants characterize the January 8 encounter as consensual because Duvall retrieved his phone and permitted deputies to view and photograph information associated with his Discord account. FAC ¶ 21. That characterization omits the circumstances in which the deputies allegedly obtained his cooperation. Plaintiffs allege that Walton invoked a purported report of threats of self-harm as a pretext to obtain information for a separate Texas criminal investigation, and that MCSO personnel had discussed how to obtain that information without alerting Duvall to Shaw's investigation. FAC ¶¶ 20–24, 57–60. The issue is whether, under the circumstances alleged, Duvall knowingly, voluntarily, and intelligently consented to the challenged access.

The Fourth Amendment's consent inquiry turns on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 248–49 (1973). Plaintiffs acknowledge that *United States v. Spivey*, 861 F.3d 1207, 1210–15 (11th Cir. 2017), rejects a categorical rule that police deception necessarily

invalidates consent. But that rule does not make the circumstances of the deception irrelevant or establish that consent obtained through deception is invariably voluntary. The FAC alleges more than concealment of an investigative purpose: deputies allegedly invoked a purported threat of self-harm to induce Duvall's cooperation while concealing their actual objective of obtaining evidence for Shaw's Texas investigation. FAC ¶¶ 20–24, 57–60. That alleged use of a fabricated welfare emergency is relevant to whether Duvall freely consented to the access that occurred. The absence of a formal detention or home entry, and the possibility that Duvall could have refused, do not by themselves resolve that totality-of-the-circumstances inquiry.

Nor does Duvall's act of retrieving and displaying his phone conclusively establish consent to every form of access, examination, or subsequent use of the information. The FAC distinguishes the information viewed and photographed during the January 8 encounter from the March 7 seizure of the phone and any subsequent search of its digital contents. FAC ¶¶ 21–24, 30, 61–69. Those acts present distinct Fourth Amendment questions. *Riley v. California*, 573 U.S. 373, 386–91 (2014), recognizes the substantial privacy interests in digital information stored on a cell phone and generally requires a warrant to search that information, even when officers may lawfully seize and secure the device while seeking a warrant. The use of a Faraday bag to preserve the phone does not itself establish authority to search its contents.

The alleged January 8 violation also cannot be separated from the subsequent investigation. Plaintiffs allege that the information obtained during that encounter contributed to the Texas investigation and the events leading to Duvall's arrest. FAC ¶¶ 20–24, 30, 61–69. If the information was obtained through an unconstitutional search, its subsequent use raises a separate question concerning the consequences of that violation. A later arrest warrant does not, standing alone, establish that the initial access was lawful or resolve whether information obtained during the encounter contributed to the warrant. Nor does the obtaining of a subsequent arrest warrant cleanse any constitutional violations used in obtaining the information put into the factual basis of the arrest warrant. If evidence was obtained illegally (as the photograph of Duvall's phone, his Discord account and password, etc. were) and then made a part of the factual basis of an arrest warrant affidavit, an inquiry must be conducted whereby the illegally obtained information is excised from the warrant to determine if it can still pass muster without that information. Those questions depend on the circumstances of the encounter, the scope of the access, and the role the resulting information played in the investigation.

As to Walsh, Plaintiffs do not seek to assert Duvall's personal Fourth Amendment privacy rights in his phone. Her distinct claim concerns the alleged entry into and invasion of her home.

## **III. Count III States a Valid Fourteenth Amendment Claim for Prolonged Detention**

The Florida Defendants focus on the initial arrest and argue that no individual deputy participated in the subsequent detention. The FAC, however, alleges a distinct sequence of events beginning on March 25, when Texas informed MCSO that it could not obtain a Governor's warrant and could not extradite Duvall at that time. FAC ¶ 32.

The FAC further alleges that MCSO informed the Florida court that the Texas hold was the only charge keeping Duvall in custody and requested release of the hold; the court responded that release was authorized; and Duvall was in fact released on March 25, 2025.

Defendants may rely on *Sosa v. Martin County*, No. 20-12781, 2023 WL 328389 (11th Cir. Jan. 20, 2023) (en banc), which held that a three-day detention pursuant to a valid warrant did not state a Fourteenth Amendment over-detention claim under *Baker v. McCollan*, 443 U.S. 137 (1979). Plaintiffs' allegations, however, do not rest solely on the length of Duvall's detention or a failure to resolve uncertainty concerning his identity. Plaintiffs do not contend that Texas's decision not to extradite automatically invalidated the underlying warrant. Rather, the involuntariness of Duvall's consent to search on 01/08/25 rendered the arrest warrant invalid. Therefore, Duvall's detention from 03/07/25 to 03/25/25 was invalid.

Section 1983 requires personal participation or a causal connection between each defendant's conduct and the alleged constitutional deprivation. Plaintiffs rely on the FAC's allegations concerning the validity of the arrest warrant. The sufficiency of the claim as to each individual defendant must be assessed in light of those allegations and the defendant's alleged role in the continued detention. The initial arrest does not, by itself, resolve whether Duvall's confinement for eighteen days was constitutionally permissible.

## IV. Counts IV and VI Must Be Evaluated Under the Governing Municipal-Liability Standards

Plaintiffs recognize that the Sheriff cannot be held liable under § 1983 merely because MCSO employees allegedly violated the Constitution. Municipal liability requires a policy, custom, or actionable training or supervisory deficiency that caused the constitutional injury. *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989).

The FAC identifies MCSO's fugitive-arrest verification policy, its constitutional-compliance requirements, and its guidance concerning searches of cellular phones. FAC ¶¶ 96–104, 143–47. Plaintiffs do not contend that the mere existence of those policies establishes liability. Their theory is that the alleged conduct reflects failures in implementing, supervising, training, or enforcing the safeguards governing interstate fugitive arrests, home entry, and

electronic-device searches.

The existence of a written policy does not categorically foreclose a claim that a deliberately indifferent failure to train or supervise caused a constitutional injury. At the same time, an allegation that officers failed to follow an adequate policy is not, standing alone, sufficient to establish municipal liability. The relevant question is whether the particular deficiency alleged plausibly caused the constitutional deprivation and, where deliberate indifference is required, whether the necessary notice and culpability are adequately pleaded.

The FAC alleges deficiencies in training and supervision and alleges that MCSO had notice of recurring constitutional concerns. FAC ¶¶ 102–113, 143–52. Plaintiffs rely on those allegations as part of the pleaded theory, not on the mere fact that multiple officers participated in this investigation. The Court should evaluate the sufficiency of that theory under *Monell* and *Canton*, rather than treating written policies as an automatic defense.

Plaintiffs also acknowledge that post-incident notice cannot establish pre-incident notice by itself. The allegations concerning the July 2025 notice are relevant only to the extent they support a properly pleaded theory of subsequent institutional response; they do not independently establish that the Sheriff had advance knowledge of the alleged deficiencies.

They do not ask the Court to infer municipal liability from the alleged

constitutional violations alone.

**V. Count VII Alleges Coordinated Conduct Supporting an Inference of Agreement**

A § 1983 conspiracy requires an agreement to deny a plaintiff's constitutional rights and an actual deprivation resulting from the conspiracy. *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). Plaintiffs recognize that ordinary interagency coordination, without more, is insufficient.

The FAC alleges that Shaw initiated the Texas investigation, requested MCSO assistance, and communicated with Walton about obtaining information without alerting Duvall to the Texas investigation. FAC ¶¶ 17–24, 157–60. It further alleges that the January encounter used the purported suicide-threat report to obtain identifying information and that the phone was later secured for transfer to League City. FAC ¶¶ 21–24, 30, 61–65, 159–64.

Taken together, those allegations identify more than the mere fact that two agencies worked on the same investigation: they identify a specific communication concerning the means by which information would be obtained, the subsequent acquisition of that information, and the alleged use of the information in the Texas investigation. Plaintiffs contend that these circumstances support an inference of agreement at the pleading stage.

The alleged agreement remains actionable only if the coordinated conduct resulted in a constitutional deprivation. Plaintiffs therefore rely on the

conspiracy allegations in conjunction with the underlying claims in Counts I–III; they do not contend that the alleged use of a ruse, without a constitutional violation, independently establishes conspiracy.

The factual basis for liability must also be considered separately for each defendant. The FAC alleges Walton's role in the January encounter and Shaw's communications concerning the Texas investigation. The allegations concerning Osthed and Jean-Francois principally concern the later arrest and transportation. FAC ¶¶ 25–31, 160–68.

## VI. The Motion Does Not Establish That the FAC Is a Shotgun Pleading

Defendants identify shotgun pleading as a ground for dismissal. The FAC, however, organizes the claims into separate counts addressing the alleged home entry, search and seizure, continued detention, institutional liability, and conspiracy. The relevant question is whether the FAC provides fair notice of the factual basis for each claim and the conduct attributed to the defendants against whom it is asserted. Plaintiffs submit that the FAC identifies the operative events and the legal theories arising from them. The Court should evaluate any asserted pleading defect in light of the actual organization and allegations of the FAC, rather than dismiss the action with prejudice on a generalized characterization of the pleading.

Plaintiffs recognize the Court's authority to require a clearer pleading where necessary. If the Court identifies a specific defect in incorporation,

organization, or identification of the defendants' conduct, Plaintiffs request leave to correct it under Rule 15(a)(2). The appropriate remedy would be an opportunity to cure an identified pleading defect, not dismissal with prejudice without that opportunity.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Florida Defendants' Motion to Dismiss the First Amended Complaint.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

Counsel for Plaintiff communicated with opposing counsel via e-mail exchange on 10/30/26 regarding the thrust of this motion and, based on that communication, was informed that the Florida Defendants oppose it. In accordance with Local Rule 3.01(g), counsel contacted Defendant's counsel via e-mail to meaningfully confer regarding the relief sought herein and therefore believes none of the issues herein can be resolved without court intervention.

Respectfully Submitted,

Dated: November 1, 2026

**LLG NATIONAL LAW GROUP**



Robert S. Mactavish
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue

Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b)(3), this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.



Robert S. Mactavish

**Certification Under Penalty of Perjury That Artificial Intelligence Was Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: our firm's paralegal who helped write the initial draft of this pleading used Grammarly. Although it is AI, it is not generative AI and only deals with grammar, spelling, sentence structure, etc. Grammarly does not generate content. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing, I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case

that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

Robert S. Mactavish