UNITED STATES DISTRICT COURT
for the
Middle District of Florida – Ocala Division

| | |
|---|---|
| BRITNI WALSH and FRANKLIN EUGENE DUVALL JR., *Plaintiffs,* | |
| -v- | **Case No.5:26-cv-00545-AGM-PRL** |
| CITY OF LEAGUE CITY, SHERIFF BILLY WOODS in his official capacity as Sheriff, KAILEIGH WALTON, HENRIK OSTHED, LEEF JEAN-FRANCOIS, and CLAYTON SHAW in their individual capacities, *Defendants.* | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS CITY OF LEAGUE CITY AND CLAYTON SHAW'S MOTION TO DISMISS**

**COMES NOW** Plaintiffs BRITNI WALSH and FRANKLIN EUGENE DUVALL JR. ("Plaintiffs"), by and through undersigned counsel, and hereby file this Response in Opposition to Defendants City of League City and Clayton Shaw's Motion to Dismiss Plaintiffs' First Amended Complaint (the "Motion"), and state as follows:

## INTRODUCTION

This action arises from an interstate law-enforcement investigation initiated by Detective Clayton Shaw of the League City Police Department and carried out, in significant part, by Marion County Sheriff's Office ("MCSO")

personnel in Florida. The First Amended Complaint alleges that Shaw initiated contact with MCSO concerning Plaintiff Franklin Eugene Duvall Jr., supplied information identifying Duvall and his Florida residence, and coordinated with MCSO personnel concerning investigative methods designed to obtain information without alerting Duvall to the actual purpose of the Texas investigation. The alleged coordination continued through the March 7, 2025 entry into Plaintiffs' Florida residence, Duvall's arrest and detention, the seizure of his cellular telephone, and the planned transfer of that device to the League City Police Department. (FAC ¶¶ 17–20, 25–39, 126–129, 155–164.)

Defendants City of League City ("League City") and Shaw seek dismissal principally by characterizing Shaw's conduct as out-of-state investigative activity that bears no meaningful connection to Florida, and by attributing the ensuing events exclusively to independent decisions by MCSO deputies. That characterization does not account for the allegations as a whole. Plaintiffs do not rely solely on their Florida residence or the location of their injuries. They allege that Shaw deliberately initiated and coordinated investigative activity directed at a Florida resident and Florida residence, communicated with Florida law enforcement about how to obtain information, and participated in an investigation that resulted in the acquisition and planned transfer of evidence to his own department. Those allegations provide a concrete basis to evaluate specific personal jurisdiction under Florida's long-arm statute and the

Due Process Clause, rather than treating the Florida consequences as incidental to an entirely unrelated Texas investigation.

The First Amended Complaint also plausibly alleges claims requiring further factual development. Count V alleges that League City's own policies, practices, and failures to train and supervise permitted its officers to initiate, direct, or benefit from interstate investigative activity without adequate safeguards for constitutional compliance. Count VII identifies the alleged communications and coordinated conduct underlying Plaintiffs' claim that Shaw and the MCSO defendants reached an understanding to advance the Texas investigation through law-enforcement activity in Florida. Whether discovery ultimately establishes the alleged municipal deficiencies or the scope of the agreement is not the question at this stage. The question is whether the pleaded facts, accepted as true and considered together, plausibly support the claims asserted.

The Court should therefore deny Defendants City of League City and Shaw's request to dismiss the claims against them for lack of personal jurisdiction, deny dismissal of Counts V and VII, and reject Shaw's request for qualified-immunity dismissal. Plaintiffs seek no punitive damages against League City, but that limitation does not warrant dismissal of the underlying municipal-liability claim.

## LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction requires the Court to determine whether Florida's long-arm statute authorizes jurisdiction and whether exercising jurisdiction comports with due process. *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1350 (11th Cir. 2013). At this stage, the Court accepts uncontroverted factual allegations as true and resolves reasonable inferences in Plaintiffs' favor. *PVC Windoors, Inc. v. Babbitbay Beach Constr.*, N.V., 598 F.3d 802, 810 (11th Cir. 2010).

To survive dismissal under Rule 12(b)(6), a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiffs' favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, Plaintiffs need not prove their claims; they must plausibly allege facts supporting relief.

## ARGUMENT

### A. The Complaint Alleges Florida-Directed Conduct Supporting Specific Jurisdiction Over Shaw and a Claim-Specific Basis for Jurisdiction Over League City

Personal jurisdiction requires a two-step inquiry: whether Florida's long-arm statute authorizes jurisdiction and whether exercising jurisdiction

comports with due process. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Florida's long-arm statute reaches tortious acts committed within Florida, including qualifying acts accomplished through communications into the State. *Wendt v. Horowitz*, 822 So. 2d 1252, 1258–60 (Fla. 2002). Where conspiracy is asserted as the jurisdictional basis, the complaint must adequately allege the conspiracy and acts committed in Florida in furtherance of it. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009).

In *ECB USA, Inc. v. Savencia Cheese USA, LLC*, the Eleventh Circuit rejected conspiracy-based jurisdiction under Florida's long-arm statute because the allegations of the alleged co-conspirators' Florida conduct were not "clear, positive and specific." No. 23-12580, slip op. at 16–19 (11th Cir. Aug. 28, 2025). The court identified allegations describing continued wrongful conduct in Florida but found them insufficiently specific to establish the Florida acts necessary to support jurisdiction. *Id.* Here, Plaintiffs identify communications between Shaw and Walton concerning the method for obtaining information without alerting Duvall to the Texas investigation, followed by specific investigative acts in Florida, including Duvall's arrest and the seizure of his phone for intended transfer to League City. FAC ¶¶ 20, 30, 39, 127–129, 158–164. Those allegations provide a more specific factual basis for the asserted conspiracy-based jurisdiction than generalized allegations that wrongful

conduct continued in Florida.

MCSO records further describe the March 7 arrest and the seizure of Duvall's phone for intended transfer to League City Police Department. *Id.* ¶¶ 25–30, 39. These allegations identify the participants, the alleged investigative strategy, and the Florida conduct said to have advanced the Texas investigation. Plaintiffs therefore rely on specific alleged conduct, not merely on their Florida residence or the location of their injuries.

**1. Specific jurisdiction over Shaw**

The allegations support specific jurisdiction over Shaw because the asserted claim arises from his alleged participation in investigative activity deliberately directed toward Florida. Due process requires a defendant's own purposeful contacts with the forum and a connection between those contacts and the claim; a plaintiff's unilateral connection to the forum is insufficient. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). The claims must arise out of or relate to the defendant's forum contacts. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358–60 (2021).

Plaintiffs do not rely solely on the fact that Duvall resided in Florida. They allege that Shaw initiated contact with Florida law enforcement, supplied information identifying Duvall and his Florida residence, coordinated with Walton concerning a method of obtaining information without disclosing the Texas investigation's actual purpose, and pursued the investigation that

resulted in the arrest and seizure of evidence in Florida. FAC ¶¶ 17–20, 127, 158–164. Count VII arises from the alleged agreement and the Florida conduct undertaken in furtherance of it. These allegations support the conclusion that Shaw's alleged Florida contacts were purposeful and directly related to the conspiracy claim.

**2. Specific jurisdiction over League City**

League City's jurisdiction must be evaluated separately. Plaintiffs do not contend that the City is subject to jurisdiction merely because Shaw was its employee. Rather, the First Amended Complaint alleges that Shaw initiated and advanced the investigation in his capacity as a League City detective and within the scope of his law-enforcement duties; that he requested MCSO assistance to advance that investigation; and that the Florida activity was undertaken to obtain information and evidence for use in the Texas investigation. FAC ¶¶ 126–131. MCSO records identify the investigation as assistance to another agency and describe the phone as intended for submission into evidence and transfer to League City Police Department. *Id.* ¶¶ 30, 39, 128.

These allegations connect the Florida activity to the City's own law-enforcement operations rather than to an unrelated investigation. Plaintiffs' jurisdictional theory rests on the alleged conduct undertaken through Shaw in furtherance of the City's investigation, together with the alleged relationship

between that conduct and the municipal practices challenged in Count V.

Florida's long-arm statute expressly contemplates acts performed personally or through an agent, and general agency principles may be relevant to attributing contacts to a principal. See Fla. Stat. § 48.193(1); *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002). Whether Shaw's relevant acts are attributable to League City depends on the nature and scope of the alleged agency relationship and the acts at issue, not merely on his job title.

The alleged contacts must also satisfy due process. The question is whether League City, through conduct properly attributable to it, purposefully established a connection with Florida and whether Count V arises out of or relates to that connection. *Walden*, 571 U.S. at 284–86; *Ford Motor Co.*, 592 U.S. at 358–60. Plaintiffs allege that the City's detective initiated and coordinated the investigation that generated the Florida activity and that the resulting evidence was intended for use by the City's police department. FAC ¶¶ 126–131. Those allegations provide a basis to argue that the Florida activity was connected to the City's own investigative operations, rather than merely an incidental consequence of conduct wholly unrelated to the City.

The Court should evaluate the alleged agency relationship, the City-directed purpose of the investigation, and the relationship between the Florida activity and Count V under the applicable statutory and constitutional

standards. Plaintiffs accordingly request that the Court deny the jurisdictional challenge.

## B. Count V Alleges That League City's Own Investigative Practices and Training Deficiencies Caused or Facilitated the Challenged Conduct

A municipality may be liable under § 1983 when its own policy, custom, or deliberately indifferent failure to train causes a constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). Plaintiffs do not seek to hold League City liable merely because it employed Shaw. They allege that Shaw exercised the investigative authority entrusted to him by the City to initiate and coordinate an investigation involving a Florida resident, enlist another jurisdiction's officers, obtain information through that investigation, and arrange for evidence collected in Florida to be transferred to League City. FAC ¶¶ 126–131, 157–164.

Plaintiffs further allege that the City failed to establish or enforce adequate safeguards governing its officers' coordination of out-of-state investigations and their acquisition and use of evidence obtained through another jurisdiction's law-enforcement agency. Id. ¶¶ 129–134.

The alleged deficiency concerns the City's own investigative operations.

MCSO records document communications between Shaw and Walton about obtaining information without alerting Duvall to the actual purpose of the Texas investigation. FAC ¶¶ 127, 159. The investigation subsequently led to Duvall's arrest in Florida and the seizure of his phone, which MCSO records identified for submission into evidence and transfer to League City Police Department. Id. ¶¶ 30, 39, 128, 160–164.

These allegations connect the challenged Florida activity to the investigation Shaw initiated and coordinated on the City's behalf. Plaintiffs allege that League City's policies, practices, and training deficiencies failed to provide adequate constitutional safeguards for this investigative activity, including the acquisition and use of information and evidence through another jurisdiction's officers. Id. ¶¶ 129–131.

The claim is not that League City is liable simply because Shaw exercised discretion or because MCSO deputies physically performed the challenged acts. It is that the City entrusted its detectives with substantial investigative authority, including authority to initiate investigations, coordinate with outside law-enforcement agencies, obtain warrants, and arrange for evidence to be collected in other jurisdictions, but allegedly failed to establish or enforce adequate safeguards governing those operations.

The constitutional restrictions implicated here - including the limits on warrantless residential entry and unreasonable searches and seizures - apply

to ordinary law-enforcement activity. The relevant question is whether the City's own policy, custom, or deliberately indifferent failure to train or supervise caused the alleged constitutional deprivations. The fact that another agency's deputies executed the entry, arrest, and seizure does not by itself resolve that question.

The complaint also alleges that League City had prior notice of constitutional concerns involving investigative practices, searches and seizures, custodial questioning, and supervisory failures. FAC ¶ 132. Plaintiffs allege that the City failed to establish or enforce adequate safeguards despite those concerns. Id. ¶¶ 129–134.

Considered together with the specific investigative conduct alleged, these allegations support Plaintiffs' contention that the challenged conduct resulted from deficiencies in the City's own practices rather than from an isolated act unrelated to its operations. Whether the evidence ultimately establishes a municipal policy or custom, or deliberate indifference in training or supervision, is a question distinct from whether the complaint plausibly connects the City's investigative practices to the alleged violations.

Defendants' causation argument rests on a too narrow characterization of the claim. Shaw allegedly initiated the investigation that prompted the Florida activity, coordinated with the officers who carried it out, and arranged for evidence obtained during that activity to be transferred to League City.

FAC ¶¶ 126–131, 136–139.

Those allegations provide a direct factual connection between the City's investigative operations and the challenged conduct. The Court should therefore deny dismissal of Count V. Alternatively, if the Court concludes that the allegations concerning prior notice, municipal practices, or training and supervision require greater specificity, Plaintiffs request leave to amend.

## C. Count VII Plausibly Alleges a Civil-Rights Conspiracy Against Shaw.

A § 1983 conspiracy claim requires facts supporting an agreement to deprive a person of a constitutional right and an actual deprivation resulting from an act taken in furtherance of the agreement. *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). The agreement may be inferred from circumstantial evidence, but conclusory assertions of conspiracy are insufficient.

Count VII alleges specific communications and coordinated conduct supporting an inference of agreement beyond the mere fact that officers from two agencies participated in the same investigation. According to the MCSO records described in the complaint, Walton communicated with Shaw about obtaining information without alerting Duvall to the true purpose of the Texas investigation, and they selected the purported "swatting" inquiry as a means

of obtaining information through a noncustodial encounter. FAC ¶¶ 157–159. The complaint further alleges that Shaw supplied identifying information, pursued the Texas warrant used in Florida, and coordinated an investigation that later resulted in Duvall's arrest and the seizure of his phone for intended transfer to League City. Id. ¶¶ 160–164.

Taken together, these allegations support an inference that Shaw and participating MCSO personnel agreed to advance the Texas investigation through coordinated Florida investigative activity, including obtaining information without disclosing the investigation's actual purpose and securing evidence for the Texas investigation. *Id.* ¶¶ 162–167.

Plaintiffs allege that this coordinated activity resulted in the constitutional violations described in Counts I through III. The alleged communications, investigative strategy, and subsequent acts provide factual support for the claimed agreement and its connection to the alleged deprivations. The claim therefore rests on specific conduct, not merely on the conclusion that officers from different agencies conspired.

The complaint does not allege that Shaw personally entered the residence or detained Duvall after the Florida court authorized his release. Plaintiffs' theory instead rests on Shaw's alleged participation in the coordinated investigation and the acts undertaken in furtherance of the alleged agreement. Shaw need not have personally performed every challenged

act for conspiracy liability to attach if the required agreement, participation, and resulting constitutional deprivation are established. The Court should evaluate Count VII on that pleaded theory rather than treating Shaw's lack of personal execution of each act as dispositive.

**D. Qualified Immunity Does Not Warrant Dismissal of Count VII at This Stage**

Qualified immunity protects officials performing discretionary functions unless their conduct violates a constitutional right that was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). The inquiry must account for the specific conduct alleged and the particular constitutional right at issue; it cannot be resolved by describing the conduct only as routine cooperation between law-enforcement agencies.

Shaw argues that no clearly established precedent makes an out-of-state detective liable merely for identifying a suspect, requesting assistance, discussing an investigation, or supplying a warrant. Plaintiffs do not contend otherwise. Their claim is that Shaw participated in an agreement to advance an investigation through unconstitutional means. Specifically, the complaint alleges that Shaw and Walton discussed obtaining information without alerting Duvall to the actual purpose of the Texas investigation, selected the purported "swatting" inquiry as the means of obtaining information, and

continued coordinated investigative activity that resulted in Duvall's arrest and the seizure of his phone in Florida. FAC ¶¶ 157–164.

The underlying constitutional rules were established before the events alleged here. The Fourth Amendment's protection against warrantless, nonconsensual residential entry absent exigent circumstances was clearly established. *Payton v. New York*, 445 U.S. 573, 590 (1980); *McClish v. Nugent*, 483 F.3d 1231, 1241–42 (11th Cir. 2007); *Bailey v. Swindell*, 940 F.3d 1295, 1303–04 (11th Cir. 2019). Consent to a search must also be voluntary under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 227 (1973). Plaintiffs do not contend that investigative deception, standing alone, necessarily invalidates consent. See *United States v. Spivey*, 861 F.3d 1207, 1214–15 (11th Cir. 2017).

Rather, the alleged communications and coordinated conduct support Plaintiffs' claim that Shaw knowingly participated in an agreement to advance the Texas investigation through unconstitutional conduct. Under *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010), the conspiracy claim depends on proof of an agreement and an actual deprivation of a constitutional right. The question is whether Shaw's alleged participation, viewed in the context of the particular constitutional deprivation alleged, violated clearly established law - not whether ordinary interagency cooperation is itself unconstitutional.

Plaintiffs recognize that qualified immunity requires a clearly established right sufficiently particularized to the circumstances alleged. The Court should not grant immunity merely by recasting the pleaded conduct as ordinary interagency cooperation while disregarding the alleged deceptive investigative strategy and coordinated acts. If the Court concludes that the existing allegations do not adequately identify a clearly established right applicable to Shaw's alleged participation, Plaintiffs request leave to amend rather than dismissal with prejudice.

## E. The Limitation on Punitive Damages Does Not Require Dismissal of Count V

Plaintiffs acknowledge that punitive damages are unavailable against a municipality under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). That limitation concerns the available remedy, not the viability of an otherwise adequately pleaded municipal-liability claim. Accordingly, the unavailability of punitive damages provides no basis to dismiss Count V.

## F. Alternatively, Plaintiffs Request Leave to Amend

If the Court determines that any claim against League City or Shaw requires additional factual detail, Plaintiffs request leave to amend under Federal Rule of Civil Procedure 15(a)(2). Dismissal with prejudice is

unwarranted where any identified pleading deficiency may be cured by amendment.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants City of League City and Clayton Shaw's Motion to Dismiss the First Amended Complaint. Alternatively, Plaintiffs request leave to amend any claim the Court determines requires additional factual allegations.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

In accordance with Local Rule 3.01(g), undersigned counsel contacted Defendant's counsel via telephone on Monday morning 11/02/26 to meaningfully confer regarding the relief sought herein. Defendants' counsel made it known that he opposes this Response in Opposition and will not agree to withdraw his Motion to Dismiss. Therefore, it is clear that none of the issues herein can be resolved without court intervention.

Respectfully Submitted,

Dated: November 02, 2026

**LLG NATIONAL LAW GROUP**



Robert S. Mactavish
Florida Bar Number 0596388

Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b)(3), this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

______________________________
Robert S. Mactavish

## Certification Under Penalty of Perjury That Artificial Intelligence Was Used in the Preparation of This Filing

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: our firm's paralegal who helped write the initial draft of this pleading used Grammarly. Although it is AI, it is not generative AI and only deals with grammar, spelling, sentence structure, etc. Grammarly does not generate content. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing, I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition

may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.



Robert S. Mactavish